**Josephine J. CHAMBLISS, etc.**

v.

**J. R. FOOTE, etc., et al.**

**Civ. A. No. 74–1185.**

United States District Court, E. D. Louisiana.

July 9, 1976.

Alvin O. Chambliss, Oxford, Miss., Hilliard Fazande, II, New Orleans, La., for plaintiff.

Rutledge C. Clement, Jr., Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for defendants.

## MEMORANDUM OPINION AND ORDER

BOYLE, District Judge:

After oral argument, we took under submission the defendants' motion for dismissal and, alternatively, for summary judgment, as well as plaintiff's cross-motion for summary judgment and motion to maintain the action as a class action. After due consideration given the matter, we find and conclude as follows:

The plaintiff has not exhausted her administrative remedies by obtaining a right-to-sue letter from the E.E.O.C.—a jurisdictional prerequisite to the assertion of a claim under Title VII of the Civil Rights Act of 1964. *East v. Romine, Inc.,* 518 F.2d 332, 336 (5 Cir. 1975). Additional-

**14**

ly, one cannot claim individual injury from recruitment discrimination when hired through the allegedly discriminatory method or practice employed. *Causey v. Ford Motor Co.,* 516 F.2d 416 (5 Cir. 1975).

Accordingly, the defendants' motion to dismiss should be, and is hereby, GRANTED, insofar as the complaint purports to allege a Title VII violation or discrimination in recruitment claim, and is DENIED in all other respects.

■ The complaint also charges that the non-renewal of the plaintiff's appointment and the treatment afforded her while employed at the University of New Orleans was the result of racial, religious or sex discrimination or because she and/or her husband exercised their right of freedom of speech or freedom of association. It is further alleged that there was a conspiracy to interfere with the plaintiff's civil rights and that she was deprived of her right to a "due process" hearing, prior to the non-renewal of her teaching contract. These allegations must be analyzed in light of the well settled proposition that a non-tenured teacher, such as the plaintiff, may be "discharged" for no reason or for any reason not intrinsically impermissible in itself or as applied. *Kaprelian v. Texas Woman's University,* 509 F.2d 133, 139 (5 Cir. 1975).

■ The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 1165–66, 47 L.Ed.2d 405 (1976). There is no evidence to indicate that any charges were made public by school officials. Even if this were true, however, the plaintiff has submitted no evidence to substantiate her claim that she has suffered a loss of her good name, reputation, honor and integrity.[1] Therefore, no "liberty" right that the plaintiff possessed was in-

fringed. *Bishop v. Wood,* 426 U.S. 341, 347–350, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Paul v. Davis,* supra; *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Kaprelian v. Texas Woman's University,* supra.

Although tenure is not an issue in this case because her written contract clearly was only for a one year term, the plaintiff asserts that an oral understanding was reached which would justify her claim to or expectation of continued employment. In support of this theory, however, the plaintiff can only state that Dr. Foote, Chairman of the Mathematics Department, advised her and left her with the impression that she could be retained in her present position for a period of up to four years.

In *Perry v. Sindermann* it was declared that the absence of an explicit contractual provision relative to tenure "may not always foreclose the possibility that a teacher has a 'property' interest in employment." 408 U.S. 593, 601, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1972). Justice Stewart prefaced that statement, however, with the requirement that there be "such rules or mutually explicit understandings that support [a person's] claim of entitlement to the benefit [which] he may invoke at a hearing." *Id.*

■ That which was said by Dr. Foote is consistent with University Regulations (*see* Record, Document No. 63, Exhibits Nos. 1 & 2), with which the plaintiff was or should have been familiar, and which provide that employees in the plaintiff's position are on annual appointments, not normally subject to renewal beyond four years. Even assuming *arguendo* that his assurances transgressed a mere restatement of this policy and in fact constituted an employment commitment in excess of the one year term, which he denied, it is evident that he had no authority to bind the university in this re-

---

1. The plaintiff has not filed an employment application with any other educational institution, nor has she requested a recommendation in this regard. It is clear that the "mere fact that non-retention by a school system might make a teacher less attractive to other school

systems does not constitute deprivation of liberty so as to entitle the teacher to a pretermination hearing." *Kelly v. West Baton Rouge Parish School Board,* 517 F.2d 194, 199 (5 Cir. 1975).

gard. In that the plaintiff had no more than an unilateral, subjective and unreasonable expectation of continued employment, she had no "property" interest of which she was deprived because no hearing was conducted. *Roth v. Board of Regents,* supra; *Laborde v. Franklin Parish School Board,* 510 F.2d 590 (5 Cir. 1975); *Ducorbier v. Board of Supervisors,* 386 F.Supp. 202 (E.D. La.1974).

■ After extensive discovery, the plaintiff has been unable to substantiate the conclusory allegations in the complaint with respect to religious or sex discrimination.[2] Nor has the plaintiff been able to produce any competent evidence relative to the claim that First Amendment rights have been violated.[3] The evidence does not support a finding of any causal connection between the statements made or demonstrative activities engaged in by the plaintiff or her husband and the non-renewal of her contract. *See Markwell v. Culwell,* 515 F.2d 1258 (5 Cir. 1975).

■ Furthermore, a reading of the record[4] shows that it is equally devoid of any proof relative to the claim that the non-renewal of the plaintiff's contract was racially motivated. The plaintiff's self-serving statements concerning events and practices of which she has no personal knowledge are simply not sufficient.

■ We have previously found no merit to the allegations of the complaint, insofar as it purports to assert a cause of action pursuant to 42 U.S.C. §§ 1981–1983.[5] With respect to the asserted 42 U.S.C. § 1985(3) claim, the evidence negates the existence of a conspiracy. Moreover, the university and its officials are considered as constituting a single legal entity which cannot conspire with itself. *See, e. g., Cole v. University of Hartford,* 391 F.Supp. 888 (D.Conn.1973) and cases cited therein. For the same reason, 42 U.S.C. § 1986 is likewise inapplicable to the facts of this case. *Hamilton v. Chaffin,* 506 F.2d 904 (5 Cir. 1975).

We conclude, therefore, that there is no genuine issue as to any material fact and that the matter is ripe for summary judgment. *See Curl v. International Business Machines Corp.,* 517 F.2d 212, 213 (5 Cir. 1975); *Lester v. Hanover Ins. Co.,* 488 F.2d 976 (5 Cir. 1974); *DeBardeleben v. Cummings,* 453 F.2d 320, 324 (5 Cir. 1972). Accordingly, the defendants' motion for summary judgment should be, and it is hereby, *GRANTED.* Also, the plaintiff's cross-motion for summary judgment should be, and it is hereby, *DENIED.*

The plaintiff also seeks to maintain this action as a class action for declaratory and injunctive relief and defines the prospective class as follows:

(1) All Black persons who have been hired and/or employed by LSU in New Orleans as instructors, professors, associate professors, assistant professors who have been discriminated against because of race by LSU in New Orleans in promotions, assignments, benefits and selective dismissals.

(a) All Black persons who have applied for employment but who have not been hired by LSU in New Orleans because of racial discrimination.

(b) All Black persons who have been dissuaded and deterred from applying for positions because of defendants' denial of equal employment opportunities, and the practices that

---

**2.** *See, e. g.,* Record, Document No. 44, pp. 46–50, 53–56 and 213–215; Document No. 62, pp. 75, 159, 201 and 258–59.

**3.** *See, e. g.,* Record, Document No. 44, pp. 175–200; Document No. 62, pp. 98–106 and Exhibit 12 attached thereto; Record, Document No. 31.

**4.** *See, e. g.,* Record, Document No. 44, pp. 93–133; *see also,* Record, Document No. 55, wherein the plaintiff makes the following allegations in her affidavit: "I was discriminated against at UNO in many ways. I was denied the advantage of association with other Black teachers in the mathematics department at UNO. This was occasioned by the fact that I was the only Black teacher in the entire department. I was isolated and lonely much of the time."

**5.** 42 U.S.C. §§ 1984, 1987 and 1988, also relied upon by the plaintiff in her complaint, are not substantive in nature or are inapplicable here.

manifest this denial and which are complained of herein.

(2) All women who have been hired and/or employed by LSU in New Orleans as instructors, professors, associate professors, assistant professors who have been discriminated against because of sex by LSU in New Orleans in promotions, assignments, benefits and selective dismissals.

■ Although the requirements of Rule 23(a) must be read liberally in the context of suits brought under Title VII and *Section* 1983, the plaintiff representative must still establish that the action meets these requirements. *Rodriguez v. East Texas Motor Freight,* 505 F.2d 40, 50 (5 Cir. 1975).

■ Subclasses 1(a) and 1(b) of the asserted class relate to recruitment discrimination. Although it is true that the standard for determining whether a plaintiff may maintain a class action is not whether he or she will ultimately prevail on his claim, *Huff v. N. D. Cass Co.,* 485 F.2d 710, 712 (5 Cir. 1973), we have no jurisdiction to entertain such a claim in this case, if based on Title VII, and have determined that the plaintiff has no right to individually assert such a claim under any other theory of recovery. Furthermore, the plaintiff has

failed to demonstrate not only that the members of subclasses (1), 1(a) and 1(b) are so numerous that joinder of all is impracticable, as required by Rule 23(a)(1), but also that such subclass members exist at all.[6]

Subclass (2) refers to discrimination in promotions, assignments, benefits and selective dismissals on the basis of sex. By granting the defendants' motion for summary judgment on this issue, we have determined that the plaintiff has no individual claim for relief. Aside from this fact, however, the plaintiff has also failed to satisfy the Rule 23(a) requirement with respect to this subclass.[7] Some affirmative showing of the existence and numerosity of the purported subclass must be made.[8]

Accordingly, the plaintiff's motion to maintain the action as a class action should be, and it is hereby, DENIED.

6. Interrogatory No. 9, as amended by court order, asked the plaintiff to "[i]dentify each present or past employee of University of New Orleans with whom the plaintiff or [her] counsel has talked, conferred or corresponded and who claims, contends or believes that University of New Orleans engages in racially discriminatory employment practices." With the exception of the plaintiff and the deposed defendants, the plaintiff's response was "none." *See* also Record, Documents Nos. 31, 46 and 50; 48, 66–68. In addition, the United States Supreme Court has recently made it clear that the more rigorous Title VII standard should not be applied when hiring and job related practices are challenged as racially discriminatory in violation of the Fourteenth Amendment. In the latter case, a "statistically disproportionate impact" analysis is improper and discriminatory purpose must be proven. *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976).

7. The plaintiff had an adequate opportunity for discovery. The suit was filed on April 30, 1974. It was not until the pre-trial conference of

March 26, 1975 that we established a discovery cut-off date—July 1, 1975. This date was chosen after counsel for all parties advised the court that 90 additional days would be sufficient to complete discovery. *See* Record, Document No. 23. Furthermore, the plaintiff propounded interrogatories and deposed certain defendants well after this deadline had expired.

At a subsequent conference held on September 17, 1975, the plaintiff's counsel was ordered to file a motion to maintain the action as a class action and to notice hearing thereon for October 22, 1975. *See* Record, Document No. 39. Counsel attempted to file the motion, by mail, on October 15, 1975 and notice same for hearing on October 23, 1975. Because it was not in proper form and because it should have been filed no later than October 10, 1975, in accordance with Local Rule 3.2, the Clerk of Court refused to accept it. Nevertheless, we granted the plaintiff leave to file the motion *sub judice* on October 20, 1975.

8. *See* Record, Document No. 44, pp. 61–73.