Alfred DICKERSON, Sr., Plaintiff-Appellee-Cross-Appellant,

v.

ALACHUA COUNTY COMMISSION, Defendant-Appellant-Cross-Appellee.

No. 98-3041.

United States Court of Appeals,

Eleventh Circuit.

Jan. 14, 2000.

Appeals from the United States District Court for the Northern District of Florida. (No. 96-00142-1-CV-MMP), Maurice M. Paul, Judge.

Before DUBINA and HULL, Circuit Judges, and HOWARD[*], Senior District Judge.

HULL, Circuit Judge:

After he was demoted, Plaintiff Alfred Dickerson, Sr., brought statutory and constitutional claims against his former employer, the Defendant Alachua County Commission (the "County").[1] A jury awarded Dickerson $50,000 on his § 1985(3) claim against the Defendant County for conspiracy to interfere with his civil rights. The County appeals the denial of its motion for judgment as a matter of law on this § 1985(3) claim. The jury found for the County on Dickerson's other claims. Dickerson cross-appeals and challenges, *inter alia,* the district court's denial of his motion for a new trial based on alleged juror misconduct. After review, we reverse the district court's $50,000 judgment for Dickerson on his § 1985(3) claim and affirm the judgment for the Defendant County on Dickerson's other claims.

## I. FACTUAL BACKGROUND

Plaintiff Dickerson, an African-American, began working for the County as a corrections officer at the Alachua County Corrections Center (the "County jail") in 1970. By 1994, Dickerson had been promoted

---

[*]Honorable Alex T. Howard, Jr., Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

[1]Dickerson also named County employees Gary Brown, William Krider, Charles King, and other County and jail officials, in both their individual and official capacities, as defendants. However, these individual defendants were voluntarily dismissed by stipulation of the parties on September 5, 1997, leaving only the County as a defendant.

to lieutenant and was responsible for supervising one of three shifts of corrections officers at the jail. However, Dickerson was demoted to sergeant after an investigation of the County jail's operations following an inmate's escape.

The inmate, Richard Meissner, escaped through the recreation yard in a newly constructed section of the jail on March 2, 1994. Meissner escaped around 9:50 P.M. during Shift III, supervised by Lieutenant Steven Roberts. Plaintiff Dickerson was not on duty when Meissner escaped. However, Dickerson supervised the officers who worked on the next shift, which was Shift I, from 11:00 P.M. to 7:30 A.M. Officers on Shift I discovered Meissner's absence around 4:00 A.M. on March 3, 1994, and reported Meissner missing.

According to Plaintiff Dickerson, Meissner was able to escape in part because jail managers, including Captain Gary Brown, received advance notification about Meissner's escape plans from the Florida Highway Patrol but failed to file an incident report, move Meissner to a more secure area, or take other appropriate action. Dickerson also claims that Meissner managed to escape because the County had installed substandard fencing in the recreation yard and because Lieutenant Roberts, who was on duty when Meissner escaped, left the door to the recreation yard open until 10:00 P.M. even though standard custodial practice dictated that the door be closed at 8:00 P.M.

After Meissner's escape, both the County jail and the State Department of Corrections ("DOC") conducted investigations. Captain Brown conducted the jail's initial internal investigation. Later, Lieutenants Charles King and William Krider conducted another internal investigation, in conjunction with an investigation by Jack Schenck, who was an inspector for the DOC. Dickerson claims that serious conflicts of interest should have precluded County jail employees King and Krider from participating in the investigation. According to Dickerson, Krider knew about Meissner's escape plan in advance and failed to file an incident report, and King, who was responsible for the jail's officer training, knew that he did not have enough trained officers to staff the new section of the jail.

After completing the investigation for the DOC, Inspector Schenck issued a report citing the County jail for violating a newly-enacted state rule about posting uncertified officers alone in housing units where inmates are confined. Schenck only cited the jail for violations of the rule that occurred during Shift I—the shift supervised by Dickerson—not during Shift III, when the escape actually occurred. Schenck did not cite the jail for any violations relating to the officers' conduct before or during the escape. County jail employees King and Krider subsequently filed their own report, which also focused in large part on the posting of uncertified officers during Shift I.

As a result of these investigations, Dickerson and six other officers were disciplined. Dickerson's discipline took the form of a demotion from lieutenant to sergeant. Three other African-American officers who worked on Dickerson's Shift I also were demoted. No other officers were demoted. The supervisory staff from Shift III, during which the escape occurred, received only written warnings.

Dickerson claims that his demotion resulted from a conspiracy among Caucasian jail officers and managers, including Brown, King, and Krider. According to Dickerson, these conspirators wanted to shift the blame for the highly-publicized escape to Dickerson and other African-American officers on his shift. Dickerson alleges that the conspirators knew that the posting of uncertified officers did not actually cause the escape, but used the violations of the newly enacted rule as a way to hold Dickerson and the other African-American officers responsible for Meissner's escape.

## II. PROCEDURAL HISTORY

On June 6, 1996, Dickerson's original complaint was filed in state court, but the County subsequently removed the case to federal court. Thereafter, the district court allowed Dickerson to amend his complaint. Dickerson's third amended complaint, filed February 10, 1997, asserted eight statutory and constitutional claims against the County. In addition to his conspiracy claim under 42 U.S.C. § 1985(3), Dickerson brought race discrimination claims under Title VII, 42 U.S.C. § 1981, and state law; an Equal Protection claim; and civil rights claims under 42 U.S.C. § 1983 (alleging violations of his constitutional liberty interest, his free speech rights, and his due process rights).

On August 15, 1997, the County moved for summary judgment on Dickerson's § 1985(3) and § 1981 claims. The district court granted the motion as to Dickerson's § 1981 claim but denied it as to his § 1985(3) conspiracy claim. The district court also denied a subsequent County motion for partial summary judgment on the remaining claims.

Discovery closed in early November 1997. On February 24, 1998, one week before the pre-trial conference, Dickerson sought leave to file a fourth amended complaint in order to add the DOC and three individual DOC employees as defendants for purposes of the § 1985(3) conspiracy claim. The district court denied Dickerson's motion. The district court determined, *inter alia,* that allowing Dickerson's amendments would result in undue delay and prejudice to the County and that Dickerson had offered no satisfactory reason why this amendment had not been requested earlier. The district court also observed that Dickerson had filed a separate action in state court against the DOC and the individual DOC employees, and thus a forum was available for Dickerson to pursue his claims against the DOC and its employees.

The case against the Defendant County proceeded to trial on April 6, 1998. At the close of the evidence, the County moved for judgment as a matter of law on all remaining claims. The district court granted the County's motion only as to Dickerson's procedural due process claim. The remaining claims were submitted to the jury, which returned a special verdict for Dickerson on his § 1985(3) conspiracy claim against the County and for the County on Dickerson's other claims. The jury awarded Dickerson $50,000 in non-economic compensatory damages. The court entered judgment for Dickerson on April 24, 1998.

After the jury was dismissed, the County renewed its motion for judgment as a matter of law on the § 1985(3) claim. Dickerson moved for judgment as a matter of law, or in the alternative, a new trial on his Title VII, Equal Protection, and First Amendment claims. The district court denied both motions.[2] The County timely appealed, and Dickerson timely cross-appealed.

III. STANDARD OF REVIEW

---

[2]The district court reserved ruling on the parties' motions for attorneys' fees and costs pending the outcome of this appeal.

This Court can reverse a jury's verdict if the district court erred in not granting a defendant's motions for judgment as a matter of law. *Von Stein v. Brescher,* 904 F.2d 572, 578 (11th Cir.1990). We review a district court's denial of a motion for judgment as a matter of law *de novo,* applying the same legal standards used by the district court. *Dade County v. Alvarez,* 124 F.3d 1380, 1383 (11th Cir.1997), *cert. denied,* 523 U.S. 1122, 118 S.Ct. 1804, 140 L.Ed.2d 943 (1998); *Shukla v. BP Exploration & Oil, Inc.,* 115 F.3d 849, 851 (11th Cir.1997).

## IV. DISCUSSION

After review, we find that only the two main issues raised in the County's direct appeal merit discussion, to wit: (1) whether a Title VII claim preempts a § 1985(3) claim where the same conduct underlies both claims, and (2) whether the intracorporate conspiracy doctrine applies in a § 1985(3) case against a government entity and its employees.[3] The Title VII preemption issue is an issue of first impression in this circuit.

*A.     Title VII Preemption*

Although this circuit has not previously addressed Title VII's preemptive effect in the context of claims under 42 U.S.C. § 1985(3),[4] this circuit has resolved the issue for claims under 42 U.S.C. § 1983. In

---

[3]In his cross-appeal, Dickerson argues that the district court erred (1) in denying his motion to strike the order dismissing the individual defendants based on fraud in the inducement; (2) in denying his motion to add the State Department of Corrections and three of its employees as defendants; (3) in denying his motion for a new trial based on alleged juror misconduct; and (4) in denying his request for a hearing under *Batson v. Kentucky,* 476 U.S. 79, 96-97, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). After review, we find no reversible error and affirm the judgment of the district court as to these claims without further discussion. *See* 11th Cir. R. 36-1.

[4]Section 1985(3) provides for the recovery of damages by a party who is injured as a result of a conspiracy to deprive any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws:

> If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... [and] if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

*Johnson v. City of Fort Lauderdale,* 148 F.3d 1228 (11th Cir.1998), this Court considered a challenge to § 1983 claims arising out of the same facts as § 1981 and Title VII claims also brought by the plaintiff in that case. The defendants in *Johnson* argued that Title VII, with its comprehensive remedial scheme, provided the exclusive remedy for the workplace discrimination alleged by the plaintiff, a public employee. *See id.* at 1229. The defendants also asserted that if § 1983 could be used to sue for employment discrimination, Title VII's procedural safeguards could be undermined. *See id.* at 1231. The County makes similar arguments in this case to support its position that Title VII preempts a § 1985(3) conspiracy claim for employment discrimination.

The *Johnson* Court, however, rejected the defendants' arguments after considering Title VII's structure and legislative history and finding that it reflected Congress's intent to retain § 1983 as a parallel remedy for unconstitutional employment discrimination. *See id.* at 1229-31. The Court concluded that the plaintiff's § 1983 claims were viable because "the Civil Rights Act of 1991 did not render Title VII and § 1981 the exclusive remedies for public sector employment discrimination, thereby preempting a constitutional cause of action under § 1983." *Id.* at 1231. We find no principled basis to distinguish between § 1983 and § 1985(3) in this regard. Thus, following *Johnson,* we conclude that Title VII also does not preempt a constitutional cause of action under § 1985(3).

The County argues that a different result is required under *Great American Federal Savings & Loan Association v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). We disagree. The issue addressed in *Novotny* was "whether the rights created by Title VII may be asserted within the remedial framework of § 1985(3)." *Id.* at 377, 99 S.Ct. 2345. The Supreme Court began by noting that "Section 1985(3) provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates." *Novotny,* 442 U.S. at 372, 99 S.Ct. 2345. The Supreme Court proceeded to hold that § 1985(3) may not be used to enforce rights created by Title VII. *Id.* at 378, 99 S.Ct. 2345. The Supreme Court reasoned that to hold otherwise and allow plaintiffs to use § 1985(3) to enforce rights created under Title VII

42 U.S.C. § 1985(3).

would impair the effectiveness of Title VII's comprehensive remedial scheme. *Id.* at 378, 99 S.Ct. 2345. The *Novotny* Court did not address whether Title VII preempts a § 1985(3) claim based on rights created by the Constitution or laws other than Title VII.

In the present case, although Dickerson's Title VII and § 1985(3) claims arise out of the same underlying facts, the rights which are the basis of the § 1985(3) claim are rights created by the Constitution, not by Title VII. Indeed, Dickerson's § 1985(3) claim is based on the Fourteenth Amendment rights to equal protection of the laws and due process. Because this case involves the assertion of constitutional rights, the holding of *Novotny* simply does not apply here. Thus, consistent with our prior decision in *Johnson,* we hold that Dickerson's § 1985(3) claim is not preempted by Title VII.

B.      *Intracorporate Conspiracy Doctrine*

Because we find that Dickerson's § 1985(3) claim is not preempted, we turn next to the question of whether the intracorporate conspiracy doctrine applies and precludes Dickerson's § 1985(3) conspiracy claim in this case. Under the intracorporate conspiracy doctrine, a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation. This doctrine stems from basic agency principles that "attribute the acts of agents of a corporation to the corporation, so that all of their acts are considered to be those of a single legal actor." *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 603 (5th Cir. Nov.1981); *see also United States v. Hartley,* 678 F.2d 961, 970 (11th Cir.1982).[5] The reasoning behind the intracorporate conspiracy doctrine is that it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself, just as it is not possible for an individual person to conspire with himself. *See Dussouy,* 660 F.2d at 603 (explaining that "the multiplicity of actors necessary to conspiracy" is negated when the agents' acts are attributed to the corporation and the corporation and its agents are viewed as a single legal actor); *Nelson Radio & Supply Co., Inc. v. Motorola, Inc.,* 200 F.2d 911, 914 (5th Cir.1952) (stating that "[a] corporation cannot conspire with itself any more than a private

---

[5]These principles serve the policies both of allowing the corporation to act through its agents and of holding the corporation financially responsible for such actions. *See Hartley,* 678 F.2d at 970; *Dussouy,* 660 F.2d at 603.

individual can").[6] This doctrine has been applied not only to private corporations but also to public, government entities. *See Chambliss v. Foote,* 562 F.2d 1015 (5th Cir.1977), *aff'g,* 421 F.Supp. 12, 15 (E.D.La.1976) (applying the intracorporate conspiracy doctrine to bar a § 1985(3) claim against a public university and its officials); *see also Wright v. Illinois Dept. of Children & Family Servs.,* 40 F.3d 1492, 1508 (7th Cir.1994) (holding that intracorporate conspiracy doctrine applies not just to private entities but also to government agencies such as the Department of Children and Family Services); *Runs After v. United States,* 766 F.2d 347, 354 (8th Cir.1985) ("The Tribal Council as an entity or governmental body cannot conspire with itself."). Against this background, we now examine Dickerson's claim.

In order to establish a § 1985(3) conspiracy claim, Dickerson must show an agreement between "two or more persons" to deprive him of his civil rights. 42 U.S.C. § 1985(3). On appeal, Dickerson's brief claims that he has alleged and proven a conspiracy between County employees, including King and Krider, and DOC employees, including Schenck. In his third amended complaint, however, Dickerson did not allege that any DOC employee was involved in the conspiracy, and that complaint has not been either expressly or impliedly amended to include such an allegation.[7] As a result, we view the alleged civil conspiracy as involving solely County and not DOC employees. If, under the intracorporate conspiracy doctrine, the County and its employees are considered a single legal entity, then that single legal entity would not be capable of conspiring with itself. In that event, Dickerson would not be able to establish that a civil conspiracy existed.

---

[6]This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

[7]Although Dickerson's fourth amended complaint did allege a conspiracy involving both County and DOC employees, we find that the district court did not abuse its discretion in not allowing Dickerson to file that complaint. Dickerson's original complaint was filed June 6, 1996, but he did not seek leave to file his fourth amended complaint until February 24, 1998, which was one week before the pre-trial conference. The court did not err in finding that Dickerson had offered no satisfactory reason for his failure to request these amendments earlier. Indeed, we agree with the district court's determination that allowing these amendments would have resulted in undue delay and prejudice to the County. Thus, our opinion does not address the allegations in Dickerson's fourth amended complaint.

We find that Dickerson's § 1985(3) claim is controlled by *Chambliss v. Foote,* 562 F.2d 1015 (5th Cir.1977), *aff'g,* 421 F.Supp. 12, 15 (E.D.La.1976).[8] In *Chambliss,* the plaintiff, a non-tenured teacher, brought a number of claims after the non-renewal of her employment contract, including a § 1985(3) claim alleging that the University of New Orleans and its officials conspired to interfere with her civil rights. Regarding the § 1985(3) claim, the district court held that "the university and its officials are considered as constituting a single legal entity which cannot conspire with itself." *Chambliss,* 421 F.Supp. at 15. In other words, the court applied the intracorporate conspiracy doctrine to shield the public university from § 1985(3) liability in a civil conspiracy claim. This circuit's predecessor affirmed on the basis of the district court's opinion. *Chambliss,* 562 F.2d at 1015.

This case, like *Chambliss,* involves a § 1985(3) claim against actors who are part of a single, public entity and who allegedly conspired to interfere with civil rights. Also like *Chambliss,* this case does not involve even a single conspirator from outside that public entity and does not involve any criminal conduct. Thus, under *Chambliss,* the County jail and its employees are considered to constitute a single legal entity that cannot conspire with itself. *See Chambliss,* 421 F.Supp. at 15.

Eight other circuits also have applied the intracorporate conspiracy doctrine to bar § 1985(3) claims against defendants for interference with civil rights and held that agents acting on behalf of a single legal entity normally cannot conspire with themselves or with the entity. *See Benningfield v. City of Houston,* 157 F.3d 369, 378 (5th Cir.1998), *cert. denied,* --- U.S. ----, 119 S.Ct. 1457, 143 L.Ed.2d 543 (1999); *Hartman*

---

[8]This Court is bound by earlier panel holdings, such as that in *Chambliss,* unless and until those holdings are overruled *en banc* or by the Supreme Court. *See United States v. Smith,* 122 F.3d 1355, 1359 (11th Cir.1997); *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc* ) (adopting all Fifth Circuit decisions prior to October 1, 1981, as binding precedent). We recognize that this Court addressed the issue of whether the intracorporate conspiracy doctrine applies in civil rights actions in *McAndrew v. Lockheed Martin Corp.,* 177 F.3d 1310 (11th Cir.1999), but that decision has been vacated, 183 F.3d 1290 (11th Cir.1999), and the appeal reheard *en banc.* The plaintiff in *McAndrew* makes solely a § 1985(2) claim that officers of a private corporation conspired to violate his civil rights by attempting to influence and intimidate him from testifying before a federal grand jury and then completing the object of the conspiracy by retaliating against him after he testified. Thus, *McAndrew* involves an obstruction of justice claim under § 1985(2) based on interference with federal grand jury proceedings in a criminal investigation and does not involve a § 1985(3) claim for deprivation of an individual's civil rights. Consequently, *McAndrew* will not answer the precise issue in this case.

*v. Board of Trustees,* 4 F.3d 465, 469-71 (7th Cir.1993); *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist.*

*Bd. of Educ.,* 926 F.2d 505, 509-10 (6th Cir.1991); *Robison v. Canterbury Village, Inc.,* 848 F.2d 424, 430-

31 (3d Cir.1988); *Buschi v. Kirven,* 775 F.2d 1240, 1252 (4th Cir.1985); *Cross v. General Motors Corp.,*

721 F.2d 1152, 1156 (8th Cir.1983); *Rice v. President & Fellows of Harvard College,* 663 F.2d 336, 338 (1st

Cir.1981); *Girard v. 94th Street & Fifth Avenue Corp.,* 530 F.2d 66, 70-72 (2d Cir.1976).[9] Although a

---

[9]Although the argument is made that the First, Third, and Tenth Circuits have rejected the doctrine in civil rights cases, there is a significant counter-argument about the state of the law in those circuits. The First and Third Circuits have applied the doctrine to foreclose § 1985(3) claims. *See Robison v. Canterbury Village, Inc.,* 848 F.2d 424, 430-31 (3d Cir.1988); *Rice v. President & Fellows of Harvard College,* 663 F.2d 336, 338 (1st Cir.1981). Although the First and Third Circuits have questioned or have limited the application of the intracorporate conspiracy doctrine in the § 1985(3) context to a greater extent than other circuits have, these circuits have not overruled the *Robison* and *Rice* decisions directly applying the doctrine but have continued to acknowledge the doctrine. *See Stathos v. Bowden,* 728 F.2d 15, 20-21 (1st Cir.1984), and *Novotny v. Great Am. Fed. Sav. & Loan Ass'n,* 584 F.2d 1235, 1256-59 (3d Cir.1978), *vacated on other grounds,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979).

For example, in *Stathos,* the First Circuit stated generally that in the context of § 1985(3) claims, "we do not see why [the boundaries of the intracorporate conspiracy doctrine] should extend—if at all—beyond the ministerial acts of several executives needed to carry out a single discretionary decision." 728 F.2d at 21. The plaintiff female employees alleged that the defendants had violated § 1985(3) by conspiring to pay the plaintiffs less than their male counterparts. *See id.* at 17-18. The alleged conspiracy spanned more than three years. *See id.* The First Circuit ultimately concluded that the intracorporate conspiracy doctrine did not apply to preclude the plaintiffs' § 1985(3) conspiracy claims because the defendants' conduct "involved a series of acts over time going well beyond simple ratification of a managerial decision by directors. It consisted of joint discretionary activity—with many words and deeds—engaged in by each of the Commissioners." *Id.* at 21. In other words, the defendants' activities "went beyond 'a single act' of discrimination." *Id.* at 20 (quoting from the intracorporate conspiracy doctrine in *Dombrowski v. Dowling,* 459 F.2d 190, 196 (7th Cir.1972) ("[I]f the challenged conduct is essentially a single act of discrimination by a single business entity, the fact that two or more agents participated in the decision or in the act itself will normally not constitute the conspiracy contemplated by [§ 1985(3) ].")).

Similarly, in *Novotny,* the Third Circuit noted that the case before it involved more than "a single act of discrimination by a single business entity." 584 F.2d at 1259 n. 125. The plaintiff alleged that the defendant corporate officers and directors had conspired over the course of eight years to deprive female employees of equal employment opportunity. *See id.* at 1237-38, 1259 n. 125. The Third Circuit held that the concerted action among corporate officers and directors of a corporation could constitute a conspiracy under § 1985(3). *Id.* at 1259. However, because the plaintiff did not allege that the corporation had participated in the conspiracy with the officers and directors, *see id.* at 1257, the Third Circuit observed that the case did not present an "occasion to evaluate the force of the proposition that a corporation cannot conspire with itself." *Id.* at 1258. Our holding here addresses a discrete act of discrimination in an investigation relating to one escape and is thus quite different from the eight year conspiracy in *Novotny* and the three year conspiracy in *Stathos.*

majority of the circuits have applied the doctrine in this way, the circuits have recognized exceptions to the doctrine's applicability.

For example, this circuit and others have recognized an exception to the doctrine for convictions involving criminal charges of conspiracy. *See United States v. American Grain & Related Ind.,* 763 F.2d 312, 320 (8th Cir.1985); *United States v. Peters,* 732 F.2d 1004, 1008 (1st Cir.1984); *United States v. S & Vee Cartage Co.,* 704 F.2d 914, 920 (6th Cir.1983); *United States v. Hartley,* 678 F.2d 961, 972 (11th Cir.1982) (citing *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 603 (5th Cir.1981) as recognizing that "a corporation can be convicted of criminal charges of conspiracy based solely on conspiracy with its own employees"). However, we do not have to decide whether this exception in criminal conspiracy cases should also apply in a civil conspiracy action because Dickerson does not allege any criminal conduct or that the conduct here could give rise to criminal charges of conspiracy against the County employees.

Similarly, other circuits also have either held or considered holding corporate agents capable of conspiring in civil rights cases when those agents act outside the scope of their employment, have an "independent personal stake" in the corporate action, or engage in a series of discriminatory acts as opposed to a single action. *See Hartman v. Board of Trustees,* 4 F.3d 465, 469-71 (7th Cir.1993) (in the context of

---

The Tenth Circuit has declined to apply the doctrine to preclude a § 1985(2) conspiracy claim, although observing that "even those circuits that extend the doctrine to civil rights cases would not apply it here" because of a generally recognized exception to the doctrine for cases in which a corporate agent has " 'an independent personal stake in achieving the corporation's illegal objective.' " *Brever v. Rockwell Int'l Corp.,* 40 F.3d 1119, 1127 (10th Cir.1994) (quoting *Buschi,* 775 F.2d at 1252 (quoting *Greenville Publishing Co. v. Daily Reflector, Inc.,* 496 F.2d 391, 399 (4th Cir.1974))). In *Brever,* the Tenth Circuit also expressed agreement with circuits that have "severely limited or questioned" the doctrine's applicability in civil rights cases by recognizing specific exceptions to its application. 40 F.3d at 1127 (citing *Stathos v. Bowden,* 728 F.2d 15, 20-21 (1st Cir.1984); *United States v. Hartley,* 678 F.2d 961, 970-72 (11th Cir.1982); *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 603 (5th Cir.1981); *Novotny v. Great Am. Fed. Sav. & Loan,* 584 F.2d 1235, 1256-59 (3d Cir.1978)). Thus, the Tenth Circuit has not yet ruled on the issue in a § 1985(3) case or in a case that did not involve one of the exceptions recognized by most circuits.

Lastly, the Ninth Circuit has reserved the issue regarding applicability of the intracorporate conspiracy doctrine to civil rights conspiracies under § 1985 for later decision. *See Mustafa v. Clark County Sch. Dist.,* 157 F.3d 1169, 1181 (9th Cir.1998); *Portman v. County of Santa Clara,* 995 F.2d 898, 910 (9th Cir.1993).

a § 1985(3) claim, discussing but rejecting an exception to the intracorporate conspiracy doctrine for corporate agents whose acts are motivated in part by "personal racial animus"); *Buschi v. Kirven,* 775 F.2d 1240, 1252 (4th Cir.1985) (in the context of a § 1985(3) claim, explaining that the Fourth Circuit has recognized and adopted exceptions to the intracorporate conspiracy doctrine where corporate agents' actions are motivated by "an independent personal stake in achieving the corporation's illegal objective" or are unauthorized); *Stathos v. Bowden,* 728 F.2d 15, 20-21 (1st Cir.1984) (declining to apply the intracorporate conspiracy doctrine to a § 1985(3) claim in which defendants' conduct "involved a series of acts over time going well beyond simple ratification of a managerial decision by directors"). Because none of these exceptions would apply based on the facts of this case, we do not reach the issue of whether to adopt them in this circuit.

Instead, we are bound to follow *Chambliss* and apply the intracorporate conspiracy doctrine here. As noted earlier, *Chambliss* and our holding in this § 1985(3) case are also consistent with eight other circuits' application of the doctrine. Accordingly, we conclude that Dickerson did not establish the existence of the alleged conspiracy. Therefore, the district court should have granted the County's motion for judgment as a matter of law on Dickerson's § 1985(3) claim.

## V. CONCLUSION

For the foregoing reasons, we reverse and vacate the district court's entry of judgment for Dickerson on the § 1985(3) claim and remand to the district court to enter final judgment for the County on Dickerson's § 1985(3) claim. We affirm the judgment for the County on all of Dickerson's other claims.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.