[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-10858

_____

PHYLLIS EDWARDS,

                                        Plaintiff-Appellant,

*versus*

DOTHAN CITY SCHOOLS,
DOTHAN CITY BOARD OF EDUCATION,
MICHAEL SCHMITZ,
individually and in his official capacity as a member of the
Dothan Board of Education,
BRENDA GUILFORD,
individually and in her official capacity as a member of the
Dothan Board of Education,
FRANKLIN JONES,
individually and in his official capacity as a member of the
Dothan Board of Education,
SUSAN VIERKANDT,

individually and in her official capacity as a member of the
Dothan Board of Education,
BRETT STRICKLAND,
individually and in his official capacity as a member of the
Dothan Board of Education,
AMY BONDS,
individually and in her official capacity as a member of the
Dothan Board of Education,
CHRIS MADDOX,
individually and in his official capacity as a member of the
Dothan Board of Education,

Defendants-Appellees.

————————————

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 1:21-cv-00248-ECM-JTA

————————————

Before WILSON, GRANT, and BRASHER, Circuit Judges.

WILSON, Circuit Judge:

Dr. Phyllis Edwards appeals the district court's dismissal of her wrongful termination suit against Dothan City Schools and Dothan City Board of Education (collectively, the Board), as well as Michael Shmitz, Brenda Guilford, Franklin Jones, Susan

Vierkandt, Brett Strickland, Amy Bonds, and Chris Maddox (collectively, the Board members). Dr. Edwards alleged three claims: (1) denial of due process; (2) conspiracy to deprive her of her due process rights; and (3) breach of contract by the Board members in their official and individual capacities. After reviewing the record, and with the benefit of oral argument, we reverse the district court's denial of Dr. Edwards' due process claim and affirm the denial of the conspiracy and breach of contract claims.

### I.        Background

On January 16, 2018, Dr. Edwards was hired as the Superintendent of Dothan City Schools in Dothan, Alabama. Her employment contract term spanned from February 26, 2018, until June 30, 2023. The employment contract stated Dr. Edwards could only be terminated for cause. Furthermore, the contract stated that the termination would not be effective until the Board provided Dr. Edwards with a statement of the cause for termination and allowed her an opportunity for a hearing. Lastly, the employment contract provided that Dr. Edwards could resign with or without cause as long as she gave at least 120 days' notice in writing of her resignation to the Board.

During Dr. Edwards' term of employment, she claims she experienced various interpersonal difficulties with the Board. The complaint alleges Dr. Edwards fielded criticism and accusations by Board members outside of official Board meetings. Due in large part to this treatment, Dr. Edwards emailed her "intent to resign" to the Board on September 8, 2020. Her letter states: "I intend to

tender my resignation to the Dothan City School Board. Please let me know who I should deal with to iron out the details." The complaint alleges that, because this was only an intent to resign and not an official resignation, Dr. Edwards did not offer a date on which she planned to leave.

On September 14, 2020, six days after the intent to resign was sent, the complaint alleges that the Board voted to terminate Dr. Edwards' contract. The minutes, mentioned in the complaint but first supplied by the Board's motion to dismiss, detail the Board's vote to "accept" Dr. Edwards' resignation.

Consequently, Dr. Edwards filed the instant action in the district court. She brought claims for deprivation of due process under 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments, conspiracy to violate civil rights in violation of 42 U.S.C. § 1985, and breach of contract. In response, the Board and the Board members filed a motion to dismiss on April 26, 2021. On February 28, 2022, the district court dismissed: (1) the due process and conspiracy claims with prejudice; (2) the breach of contract claim against the individual Defendants in their official capacity without prejudice on the basis of sovereign immunity; and (3) the breach of contract claim against the Board members in their individual capacities with prejudice. Dr. Edwards timely appealed.

## II.        Standard of Review

We review de novo a district court's order dismissing a complaint. *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1295 (11th Cir. 2011). We must "accept the [factual] allegations in the

complaint as true and construe them in the light most favorable to the plaintiff." *Henderson v. McMurray*, 987 F.3d 997, 1001 (11th Cir. 2021). But we "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While the plausibility standard is not analogous to a "probability requirement," it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### III.    Analysis

Dr. Edwards claims (1) denial of procedural due process; (2) conspiracy to deprive her of her due process rights; and (3) breach of contract by the Board members in their official and individual capacities. We will address each claim in turn.

#### A.  *Procedural Due Process*

When a public employee is in a position where they can only be discharged for cause, the public employee has a constitutionally protected property interest in their employment and cannot be fired without due process. *Gilbert v. Homar*, 520 U.S. 924, 928–29 (1997). When bringing an action under 42 U.S.C. § 1983, the plaintiff must show that the conduct was committed under the color of

state law and deprived her of her constitutional rights. However, when an employee voluntarily resigns, the employee is not deprived of any protected interest in her employment. *Hargray v. City of Hallandale*, 57 F.3d 1560, 1573 (11th Cir. 1995) (per curiam).

The Supreme Court held that it is sufficient to uphold takings of property without any predeprivation process if the taking is the result of a "random and unauthorized" act by a state employee. *Parratt v. Taylor*, 451 U.S. 527, 541 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). Further, postdeprivation remedies alone are appropriate if there is a need for exigency by the State in the taking or if providing predeprivation process would be impracticable. *Id.* at 538–39. But we previously found that when there is a procedural due process violation, *Parratt* does not apply "when the state is in the position to provide predeprivation process." *Burch v. Apalachee Cmty. Mental Health Servs., Inc.*, 840 F.2d 797, 801 (11th Cir. 1988) (en banc). Importantly, we have not addressed whether an unanticipated mistake is included in random and unauthorized conduct.

Our circuit encountered a similar case to the one at issue in *Fetner v. City of Roanoke*. 813 F.2d 1183 (11th Cir. 1987). In *Fetner*, a public employee was terminated without a formal hearing, whether the employee resigned or was terminated was at issue, and the claim was dismissed by the district court at the motion to dismiss stage. *Id.* at 1184, 1186. We decided that, when a state procedure exists to provide for the deprivation of property and it is practicable for the State to abide by those predeprivation measures,

disregarding of the same constitutes a procedural due process violation. *Id.* at 1186. Further, we held that determining whether the employee voluntarily resigned or was terminated was a question of fact that precluded summary judgment. *Id.*

Dr. Edwards argues that she is a public employee dismissible only for cause, thereby ensuring a protected property interest in her employment. As such, she asserts that she could not be terminated without due process. She states that the district court erred in finding that the Board engaged in "random and unauthorized conduct" by misinterpreting her letter as a voluntary resignation. Dr. Edwards alleges that the Board, with premeditation, acted intentionally and willfully by terminating her, which deprived her of due process. She maintains her letter expressed an "intent to resign," with no date specified, and was subject to further discussion.

In arguing for its interpretation of the facts, the Board urges us to consider Dr. Edwards' letter, the minutes of the relevant Board meeting, and the employment contract. The Board argues these documents demonstrate that Dr. Edwards left of her own volition and support the district court's characterization of the Board's conduct as "random and unauthorized." Dr. Edwards referred to this group of documents in her complaint, and the Board attached the documents to the motion to dismiss the complaint without objection.

Normally, we will not consider anything beyond the face of the complaint and documents attached thereto when considering a motion to dismiss. *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500

F.3d 1276, 1284 (11th Cir. 2007) (per curiam). However, we will consider outside documents attached to a defendant's motion to dismiss when: (1) the plaintiff mentions the document(s) at issue in the complaint; (2) the document is central to the claim; and (3) the contents are not in dispute, *i.e.*, the document's authenticity is unquestioned. *Id.*; *Baker v. City of Madison*, 67 F.4th 1268, 1276 (11th Cir. 2023). When a document considered at the motion to dismiss stage contains "ambiguities . . . subject to interpretation," courts should interpret all ambiguities in the plaintiff's favor. *Baker*, 67 F.4th at 1277.

Here, there is no disagreement as to the contents of Dr. Edwards' letter or the employment contract, and these can properly be considered. But while neither party contests the minutes' authenticity, disagreement surrounds their consideration. The minutes refer to Dr. Edwards' letter as a resignation, while Edwards' allegations reflect that the Board terminated her without cause and in violation of the due process provisions contained in her contract. Though the minutes do present ambiguity as to whether Dr. Edwards' letter should be interpreted as a resignation or termination, this does not bar their consideration. Thus, the minutes were properly considered by the district court.

What was improper, however, was the district court's interpretation of the ambiguity against Dr. Edwards. Instead of construing all ambiguities in Dr. Edwards' favor, the district court used the minutes to recharacterize the allegations within Dr. Edwards' complaint. When taking the factual allegations in Dr. Edwards'

complaint as true, there is a plausible claim for relief. In paragraph 18 of the complaint, Dr. Edwards classifies her communication as an "intent" to resign, not an actual resignation. In paragraphs 19 and 21, Dr. Edwards alleges that in the Board's "haste to get rid of" her, it did not give her a statement of cause or an opportunity to be heard, as required by the contract, before terminating her employment. These allegations, when taken as true, meet the plausibility standard that there is more than a sheer possibility that the Board and its members acted to deprive Dr. Edwards of due process. It is plausible that, based on the face of the complaint: Dr. Edwards did not voluntarily resign but was terminated; as in *Fetner*, there were no exigent circumstances necessitating a lack of predeprivation process; in such a scenario, the "random and unauthorized" exception under *Parratt* would be inapplicable; therefore, the lack of predeprivation process violated Dr. Edwards' procedural due process rights.

While our analysis should not be considered determinative on the merits, it is illustrative that Dr. Edwards alleged, at minimum, a plausible case worthy of surviving a motion to dismiss. The district court erred by ignoring that Dr. Edwards had a plausible claim to relief and not drawing reasonable inferences in her favor. We therefore reverse the dismissal of Dr. Edwards' due process claim.

### B. Conspiracy

Conspiracy to interfere with civil rights occurs when two persons conspire to prevent another person from performing their

duties or deprive them of their rights or privileges. 42 U.S.C. § 1985. A plaintiff seeking recourse under § 1985(3) must allege that the defendant had a "class-based, invidiously discriminatory animus behind the defendant's action taken in furtherance of the conspiracy." *Dean v. Warren*, 12 F.4th 1248, 1255 (11th Cir. 2021) (internal quotation marks omitted).

Furthermore, the intracorporate conspiracy doctrine provides that a corporation's employees, acting as agents of the corporation, are unable to conspire among themselves or with the corporation. *Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000). We have not addressed exceptions to the intracorporate conspiracy doctrine. *See id.* at 770 (reserving consideration of exceptions); *Grider v. City of Auburn*, 618 F.3d 1240, 1263 (11th Cir. 2010) (same); *but see Greenville Publ'g Co., Inc. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974) (holding the intracorporate conspiracy doctrine may not apply if "the officer has an independent personal stake in achieving the corporation's illegal objective").

Dr. Edwards argues that the Board members acted in concert when terminating her contract, failed to afford her a hearing, and prevented her performance of duties for the 120-day period mandated by her contract. Dr. Edwards further encourages this court to adopt the exception to the intracorporate conspiracy doctrine the Fourth Circuit identified in *Greenville*, as she claims the Board acted outside their lawful authority.

Dr. Edwards' complaint does not sufficiently allege a conspiracy. Her complaint contains several legal conclusions, stating

the Board conspired and caused her to be injured, as well as having acted in concert when terminating the contract. She does not allege any factual scenarios to support these claims. Indeed, no information is provided regarding how two or more Board members supposedly worked together. This dearth of information regarding the Board members' conduct necessitates finding that the complaint lacks the necessary factual allegations to establish a conspiracy claim. *Ashcroft*, 556 U.S. at 678. Similarly, Dr. Edwards failed to allege that the Board discriminated against her under a "class-based, invidiously discriminatory animus," preventing her from seeking recourse under § 1985(3). *Dean*, 12 F.4th at 1255.

Based on the deficiencies in Dr. Edwards' complaint, she fails to show that the district court erred. Thus, we affirm the district court's dismissal of Dr. Edwards' conspiracy claim.[1]

## C. Sovereign Immunity Law

The State of Alabama generally enjoys absolute immunity from lawsuits under Article I, Section 14 of the Alabama Constitution. This immunity applies to arms or agencies of the state. *Ex parte Tuscaloosa Cnty.*, 796 So. 2d 1100, 1103 (Ala. 2000). According to Alabama law, boards of education are considered state agencies,

---

[1] Even had Dr. Edwards properly alleged a conspiracy, the intracorporate conspiracy doctrine would bar her claim. *See Dickerson*, 200 F.3d at 767. Dr. Edwards encourages us to adopt an illegality exception. Due to the lack of factual allegations regarding the illegal actions, we need not reach the issue.

thus providing immunity from suit. S*ee Ex parte Phenix City Bd. of Educ.*, 67 So. 3d 56, 60 (Ala. 2011).

However, there are limited exceptions where sovereign immunity does not apply to breach of contract claims. *Ex parte Jackson Cnty. Bd. of Educ.*, 164 So. 3d 532, 536 (Ala. 2014). The Alabama Supreme Court has identified six exceptions to sovereign immunity:

(1)    actions brought to compel State officials to perform their legal duties;

(2)    actions brought to enjoin State officials from enforcing an unconstitutional law;

(3)    actions to compel State officials to perform ministerial acts;

(4)    actions brought under the Declaratory Judgments Act . . . seeking construction of a statute and its application in a given situation;

(5)    valid inverse condemnation actions brought against State officials in their representative capacity;

(6)(a)    actions for injunction brought against State officials in their representative capacity where it is alleged they acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law; and

(6)(b)    actions for damages brought against State officials in their individual capacity where it is alleged that they acted . . . beyond their authority.

*Id.* at 535–36 (citations omitted).

Dr. Edwards argues that sovereign immunity does not apply because her allegations fall within exceptions (1) and (3). She claims that the legal and ministerial obligations apply because the parties

had a legally binding contract, and the Board members have no discretion over whether to comply with the contract. Thus, the Board members are left with a ministerial duty to perform according to the terms of the contract.

Dr. Edwards heavily relies on *Burch v. Birdsong*, 181 So. 3d 343 (Ala. Civ. App. 2015), to support her claim against the Board members in their official capacities. This support is misplaced. In *Burch*, the plaintiff did not sue for damages or backpay; both the court and the plaintiff acknowledged that § 14 immunity barred this recovery. *Burch*, 181 So. 3d at 351. Instead, the plaintiff was seeking prospective relief in the form of an order compelling the school board members to comply with their legal duties under the employment contract. *Id.*

Here, Dr. Edwards is seeking money damages—the very relief the plaintiff in *Burch* disclaimed. Because her suit does not seek prospective relief, exceptions (1) and (3) are inapposite. Dr. Edwards' claim against the Board members in their official capacities is, therefore, barred by sovereign immunity.[2]

Dr. Edwards' claims against the Board members in their individual capacities also must fail. While individual capacity claims against the Board members are not barred by sovereign immunity,

---

[2] As this court has firmly established, issues not raised in the initial brief on appeal are typically deemed abandoned. *United States v. Campbell*, 26 F.4th 860, 871 (11th Cir. 2022) (en banc); *see also Access Now, Inc. v. Sw. Airlines, Co.*, 385 F.3d 1324, 1330–32 (11th Cir. 2014). Dr. Edwards did not argue the other exceptions to sovereign immunity. Therefore, we do not address them here.

"agents cannot be held liable for a principal's breach of contract." *Harrell v. Reynolds Metals Co.*, 495 So. 2d 1381, 1389 (Ala. 1986); *see also Whitehead v. Davison Oil Co.*, 352 So. 2d 1339, 1341 (Ala. 1977). Dr. Edwards' contract was with the Board, not the Board members in their individual capacities. The Board members were acting as the Board's agents to accomplish the Board's objectives. Thus, the breach of contract claims against the Board members in their individual capacities are necessarily unsuccessful.

In sum, Dr. Edwards did not plausibly plead an exception to sovereign immunity, and the district court properly dismissed both breach of contract claims. We affirm the district court's dismissal of Dr. Edwards' breach of contract claims.

## IV.    Conclusion

For the reasons above, we reverse the district court's denial of Dr. Edwards' due process claims and affirm the district court's denial of Dr. Edwards' conspiracy and breach of contract claims.

**AFFIRMED** in part and **REVERSED** in part.

22-10858            BRASHER, J., Concurring                    1

BRASHER, Circuit Judge, Concurring:

I concur in the Court's opinion. I write separately to flag an issue for the parties and district court.

We have long recognized that tenured public employees have a right to continued employment that is a constitutionally protected property interest under the Due Process Clause. Edwards says that her employment contract creates a protected property interest in continued employment because it prohibited her termination without cause.

At oral argument, the Board argued for the first time that Edwards lacks a constitutionally protected property interest in continued employment because her right to employment derives solely from a contract, not a state statute.

Although I do not know the right answer to the Board's argument, the issue is not as straightforward as the Board suggests. We have recognized, as a general matter, that "[t]he existence of an enforceable contract with a state or local government entity does not give rise to a constitutionally protected property interest." *Key W. Harbour Dev. Corp. v. City of Key W., Fla.*, 987 F.2d 723, 727 (11th Cir. 1993). But, as to continued employment, our predecessor court has said that "[t]he source of such a right can be a state statute, a local ordinance, or an express or implied contract." *White v. Mississippi State Oil & Gas Bd.*, 650 F.2d 540, 541 (5th Cir. Unit A. May 29, 1981). *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981)(en banc)(recognizing that Fifth Circuit decisions issued before Oct. 1, 1981 are binding in the Eleventh Circuit).

2                        BRASHER, J., Concurring                22-10858

The Court wisely declines to address this issue, as it was not briefed in this Court or the district court. But, considering the apparent tension in our precedents, I suggest the parties and the district court carefully evaluate this issue on remand.