**James FOSTER, Plaintiff,**

v.

**PALL AEROPOWER CORPORATION,**
**Defendant.**

No. 8:99–cv–927–T–26A.

United States District Court,
M.D. Florida,
Tampa Division.

Aug. 2, 2000.

John A. Shahan, Law Office of John A. Shahan, Tarpon Springs, FL, for Plaintiff.

Richard C. McCrea, Jr., Cynthia L. May, Zinober & McCrea, P.A., Tampa, FL, for Defendant.

## ORDER

LAZZARA, District Judge.

Before the Court is Defendant's Motion for Summary Judgment (Dkt.11), Plaintiff's response (Dkt.24), and various affidavits, declarations, depositions and other discovery materials. After careful consideration of the arguments and the entire file, the Court is of the opinion that the motion should be granted.

### Pertinent Background

Plaintiff James Foster, an employee of Defendant Pall Aeropower Corporation (Pall), brought this action pursuant to 42 U.S.C. § 1985(2) alleging he was injured by a conspiracy designed to obstruct justice in the federal courts. He claims injury to his person and property stemming from (1) his whistle-blowing activities related to safety violations resulting in a complaint being filed by a fellow employee with the Occupational Safety and Health Administration (OSHA), (2) his testifying at unemployment compensation hearings on behalf of fellow employees, and (3) his providing an affidavit in a federal lawsuit involving employment discrimination supporting the side of his fellow employee. He asserts he was subjected to a hostile work environment and unfair treatment in retaliation for his actions.

In particular, Pall moved Mr. Foster to a machine requiring work to be done on stainless steel, a hard metal,[1] beginning in June 1997. Mr. Foster considered the transfer to a different machine unfair treatment because working on the machine was apt to cause more physical injuries and to involve more difficult production jobs.[2] Errors were made in the number of hours worked by Mr. Foster as a result of problems with Mr. Foster's scan card. Even knowing this, Pall warned Mr. Foster twice in 1997 that "disciplinary action" would follow if he continued not to work at his scheduled time. In March 1998, he received a third and final written reprimand for not reporting to work on time.

Other retaliatory acts include never being permitted to "rework" a defective part, apparently a sought after job. He was criticized for leaving his work area untidy, leaving for break at unappointed times, and failing to complete paper work. He claims he was given difficult, rather than easy, tasks to perform as a form of punishment for having testified against and blown the whistle on Pall numerous times. On one occasion he claims that Pall prevented a subpoena from being served on him, which would have required him to provide testimony in an administrative or agency matter on behalf of a fellow employee.

On September 15, 1998, Mr. Foster signed an affidavit in support of the plaintiff and fellow employee, Mr. Gordon, in a federal lawsuit based on age discrimination. *See Gordon v. Pall Aeropower Corp.*, 1998 WL 990441, 97–1749–CIV–T–25 B (M.D.Fla. Dec. 4, 1998). All but one of the employees of Pall who provided sworn statements in the instant action avers that no one at Pall knew that Mr. Foster was going to testify or submit an affidavit supporting Mr. Gordon. David Sakevich, a former employee of Pall, however, emphatically contests the truth of the affidavits submitted by Pall in this case. Mr. Sakevich avers that he knew from conversa-

---

1. It is significantly more desirable to work on aluminum, a softer metal.

2. Previously, on May 1, 1997, he had been injured while pulling metal chips from a conveyor with plyers. One of the chips cut his finger when he pulled back with the plyers. He received stitches and on a follow-up visit to his doctor in June 1997, he was diagnosed with high blood pressure.

tions with other employees of Pall that Mr. Foster was going to testify for Mr. Gordon in his federal lawsuit. According to Mr. Sakevich, it was common knowledge at Pall that Mr. Foster was going to testify for Mr. Gordon. Mr. Foster testified in his deposition that he never discussed his affidavit with anyone at Pall and that he does not know for a fact that anyone at his facility knew that he had provided an affidavit in support of Mr. Gordon.

Mr. Sakevich observed acts of harassment toward Mr. Foster such as Mr. Foster's supervisor "rifling" through Mr. Foster's tool box for personal papers kept supposedly regarding safety violations and other notations injurious to Pall. Mr. Sakevich was not permitted to talk to Mr. Foster, nor was any other employee. He also knew of Mr. Foster's supervisor telling him to think of his wife's cancer "as an adventure." There is no evidence to rebut that his supervisor made this comment.

Mr. Foster claims he was yelled at by a manager in the beginning of this year for parking in a parking space assigned to the president of the corporation. Overall, however, Mr. Foster admits that he has never been demoted or suspended and that he has received a pay increase after every review. He continues to work at Pall because he cannot "afford to lose employment due to medical bills from his wife's cancer and death." He suffers medical and emotional distress in the nature of hypertension and other medical ailments requiring medication for anxiety. He claims he has lost overtime pay because he has been denied overtime. He values his damages at a minimum of $50,000.00.

**42 U.S.C. § 1985(2)**

Case law on the subject of section 1985(2) conspiracies to obstruct justice is sparse.[3] Of the six clauses contained in section 1985(2), this case involves the second clause, which has been referred to in the past as "clause B." *See, e.g., Bradt v. Smith,* 634 F.2d 796, 800–801 (5th Cir.), *cert. denied,* 454 U.S. 830, 102 S.Ct. 125, 70 L.Ed.2d 106 (1981). To grasp the meaning of the second, operative clause in section 1985(2), it is necessary to consider the first clause as well. The first two clauses of section 1985(2) provide as follows:

> If two or more persons in any state or territory conspire [ (A) ] to deter by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or [ (B) ] to injure such party or witness in his person or property on account of his having so attended or testified, . . . .

■ The instant action is considered to be a section 1985(2) "retaliation" claim. *See Brever v. Rockwell Int'l Corp.,* 40 F.3d 1119, 1129 (10th Cir.1994).[4] To assert a claim for relief under the second clause of section 1985(2), a plaintiff must prove (1) a conspiracy, (2) retaliation spawned by the attendance or testimony in federal court, (3) an act in furtherance of the conspiracy, and (4) injury to the plaintiff.

### Standing

■ Plaintiff correctly contends that he has standing as a witness, as opposed to a party, to bring this action. The Eleventh

3. *See Kimble v. D.J. McDuffy, Inc.,* 648 F.2d 340, 345 (5th Cir. June 1981), *cert. denied,* 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981) ("Section 1985(2) has not generated much litigation."). *Kimble* was decided by the former Fifth Circuit prior to October 1, 1981, and is therefore binding precedent. *See Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc) (decisions rendered before October 1, 1981, are binding in the Eleventh Circuit). To the extent, however, the United States Supreme Court or the Eleventh Circuit Court of Appeals has changed or

overruled any part of *Kimble,* it is no longer binding precedent. *See Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater,* 2 F.3d 1514, 1530 n. 11 (11th Cir.1993).

4. This action is not brought pursuant to section 1985(3), which requires a showing of some class-based discrimination. For a discussion of Eleventh Circuit law addressing section 1985(3) claims, see *Childree v. UAP/GA AG Chem, Inc.,* 892 F.Supp. 1554, 1567–68 (N.D.Ga.1995).

Circuit has permitted witnesses to pursue claims pursuant to the second clause of section 1985(2). *See Morast v. Lance,* 807 F.2d 926 (11th Cir.1987), *overruled on other grounds by Haddle v. Garrison,* 525 U.S. 121, 119 S.Ct. 489, 142 L.Ed.2d 502 (1998). None of the bases for affirming the dismissal of the complaint included the fact that the plaintiff was a witness rather than a party. From the clear reading of the second clause of section 1985(2), both parties and witnesses were made the subject of the intimidation and injury committed by conspirators.

As to the last clause in section 1985(3), which contains the damages provision for the entire section, there is no binding authority that limits recovery to parties as opposed to witnesses. The last clause of section 1985(3) provides as follows:

> [I]n any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, *the party so injured* or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

(Emphasis added.) Plaintiff argues that the phrase "the party so injured" does not limit recovery to parties in the sense of a named party to a lawsuit. Rather, witnesses are permitted to recover damages under section 1985(2). This argument has been previously made to and accepted by at least one other court. *See Brever v. Rockwell Int'l Corp.,* 40 F.3d 1119, 1125 n. 7 (10th Cir.1994). Absent any authority in the Eleventh Circuit to the contrary, this Court agrees with the reasoning of the *Brever* court and finds that witnesses have

standing under the second clause of section 1985(2) to sue for damages.

### Federal court requirement

■ Section 1985(2) does not afford protection against conspiracies to obstruct justice in administrative proceedings, even obstructions occurring in federal agencies such as the Office of the Comptroller of the Currency (OCC) and the Equal Employment Opportunity Commission (EEOC).[5] Thus, Defendant correctly argues that only the alleged acts of retaliation relating to Mr. Foster's participation in federal court proceedings are actionable under section 1985(2). The only allegation in the complaint related to a federal proceeding is Mr. Foster's filing a counteraffidavit to Pall's motion for summary judgment in a federal court case titled *Gordon v. Pall Aeropower Corp.,* 1998 WL 990441, No. 97–1749–CIV–T–25B (M.D.Fla. Dec. 4, 1998). Some analysis of the nature of the testimony or statement provided in the federal court proceeding may be beneficial in ascertaining whether it is plausible that the conspirators acted in retaliation for the witness giving the particular testimony.

### Testimony/Attendance Requirement

Before addressing the *Gordon* affidavit, it is necessary to determine whether an affidavit constitutes "testimony" as that word is used in section 1985(2). This Court has not uncovered a case in this Circuit definitively passing on the issue of whether testimony by affidavit is sufficient to trigger the protection of the second clause of section 1985(2). In *Carter v. Church,* 791 F.Supp. 298 (M.D.Ga.1992), the court held that an affidavit submitted in an administrative proceeding was not covered by section 1985(2), because an administrative proceeding is not a court proceeding. In footnote 2 of the opinion, the court noted, however, that "[e]ven if Ruth

---

5. *See Morast* (testimony given before OCC, an administrative agency, not protected under section 1985(2)); *Carter v. Church,* 791 F.Supp. 298 (M.D.Ga.1992) (submitting affidavit to EEOC not afforded protection under section 1985(2), citing *Kimble v. D.J. McDuffy, Inc.,* 648 F.2d 340, 348 (5th Cir. June 1981), *cert. denied,* 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981)).

Arger's affidavit to the EEOC constitutes attendance or testimony in the federal judicial system, Ms. Arger submitted her affidavit prior to discussing it with her supervisor." Thus, the court merely assumed that the filing of an affidavit in a federal court proceeding fulfills the requirement of testimony. Without belaboring the issue anymore, this Court will assume, as did the district court in *Carter*, that Mr. Foster's affidavit constitutes testimony for purposes of the second clause of section 1985(2).

### Actionable "Testimony"

At this juncture, it is clear that the only actionable "testimony" in this case is the filing of the counteraffidavit in the *Gordon* case. A review of the *Gordon* file reveals that the case was decided on motions for summary judgment without live testimony. Judge Adams, in his order granting summary judgment for Pall, quotes from Mr. Foster's statement offered in support of Mr. Gordon's position asserting age discrimination.[6] Mr. Foster averred that a supervisor told him that his co-worker, Mr. Gordon, was not promoted because Mr. Gordon would inform the chief executive "when things went wrong and why they went wrong," and the management did not want "the chief executive to know this information." Based on the content of Mr. Foster's statement, Judge Adams ruled that it did not suggest that Pall's reasons for not promoting Mr. Gordon were age-related.

A reading of the affidavit shows Mr. Foster's surprise and disappointment that Mr. Gordon was not given a promotion to a group leader position. Mr. Foster recited various acts exemplifying Mr. Gordon's abilities to perform as a group leader as compared with the lack of abilities and experience of the younger employees who were considered and chosen for the group leader positions. In the affidavit, Mr. Foster accused his supervisor of lying in an affidavit about Mr. Gordon not being help-ful to the younger employees. Mr. Foster also averred that "[his supervisor] is not trusted by his subordinates and his reputation for honesty is nonexistent."

If proven that the conspirators at Pall knew of the existence of Mr. Foster's affidavit, it could be inferred that it was negative or at least derogatory with respect to Pall. Thus, for purposes of summary judgment, this Court assumes that the counteraffidavit in the *Gordon* case might plausibly prompt a retaliatory act or retaliatory acts by conspirators at Pall. The evidence of a conspiracy must be addressed next.

### Conspiracy

"The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself." *See McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir.2000). Thus, "a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *Id.* The Eleventh Circuit, like the majority of other circuits, ascribes to the extension of the intracorporate conspiracy doctrine to cases brought pursuant to section 1985(3). *See McAndrew*, 206 F.3d at 1037.

In cases arising under section 1985(2), however, the Eleventh Circuit has pointed out an exception to the intracorporate conspiracy doctrine. If the plaintiff alleges an underlying criminal conspiracy, whether the criminal conspiracy is alleged under 18 U.S.C. § 371 or under 42 U.S.C. § 1985(2), the intracorporate conspiracy doctrine may not shield criminal conduct from civil liability under section 1985(2). *See McAndrew*, 206 F.3d at 1041. The Eleventh Circuit reasoned that section 1985, derived from section 2 of the Ku Klux Klan Act of 1871, should be applied to fulfill the intent of the original act to protect individuals from Klan terrorism. *See id.*

---

6. The affidavit signed by Mr. Foster on September 15, 1998, is a part of this file.

(Dkt.14).

■ In this particular case, the plaintiff has neither alleged nor shown any potential evidence of any conspiracy sufficient to mandate the application of the criminal conspiracy exception to the intracorporate conspiracy doctrine. Thus, the Court finds insufficient evidence which would lead a reasonable juror to render a verdict for the Plaintiff on the issue of a conspiracy.

### Act in Furtherance of the Conspiracy

Even assuming that a conspiracy may be proven,[7] there is no evidence that a particular act furthered a conspiracy to injure Mr. Foster for submitting the *Gordon* affidavit. Simply put, there was no act by Pall directly resulting from the filing of the affidavit in the *Gordon* case. The fact that Mr. Foster may have been subjected to a hostile work environment cannot be tied to the filing of the affidavit in September 1998. The acts which occurred after September 1998 include being yelled at for parking in another employee's parking space, receiving criticism about failing to file paperwork, and experiencing trouble with the scanner which keeps track of time worked. Pall had already transferred Mr. Foster to the less desirable machine to work on stainless steel in June of 1997, long before he provided the testimony in the *Gordon* case.

Even assuming Pall knew of the filing of the affidavit in the *Gordon* case, there is no showing that the filing of the affidavit in September 1998 precipitated any acts different from those complained of as early as June of 1997, with the exception of the parking incident. The parking incident occurred this year, over one year after the filing of the *Gordon* affidavit. There is no indication, other than Mr. Foster's belief, that his treatment by a manager regarding the parking error was linked to the filing of the *Gordon* affidavit.

### Injury

#### In his Property

The Supreme Court has held that an at-will employee's termination constitutes injury "in his person or property" for purposes of section 1985(2). *See Haddle v. Garrison,* 525 U.S. 121, 119 S.Ct. 489, 142 L.Ed.2d 502 (1998) (effectively overruling that portion of *Morast v. Lance,* 807 F.2d 926, 930 (11th Cir.1987), which dealt with injury). No court has ruled on whether suffering an arguable hostile work environment without loss of promotion, salary or employment constitutes sufficient injury to property under section 1985. This Court will not presume injury, absent some authority, for conspiratorial retaliatory acts precipitated by a witness' testifying in a federal court proceeding.

#### In his Person

Mr. Foster's high blood pressure was diagnosed in June of 1997, long before the filing of the *Gordon* affidavit. No arguments have been made with respect to the onset of his anxiety problems or to the cause of them. There is simply no causal connection between the filing of the *Gordon* affidavit in September 1998 and any injury to Mr. Foster's person.

### Conclusion

This Court is bound by the second clause of section 1985(2) to look only at obstruction of justice in federal court proceedings. Consequently, any and all incidents occurring as a result of testifying in federal administrative proceedings or to prevent testifying in federal administrative proceedings are not actionable under section 1985(2). Looking at the one incident which could have precipitated an actionable conspiracy, there is no showing that a hostile work environment, if one could arguably be proven, or harassment resulted from that one incident. Finally, no injury

---

7. This contention is extremely doubtful in view of *Dickerson v. Alachua County Commission,* 200 F.3d 761, 770 (11th Cir.2000), *cert. dismissed,* —— U.S. ——, —— S.Ct. ——, 147 L.Ed.2d 1025 (2000), in which the Eleventh Circuit held that it will continue to apply the intracorporate conspiracy doctrine to cases filed pursuant to at least subsection (3) of section 1985.

has been shown to Mr. Foster in his property or person as a consequence of the *Gordon* affidavit. On the contrary, Mr. Foster continues to work at Pall with no demotion or failure to receive pay increases. Based on the analysis of the law applied to the facts viewed in a light most favorable to the Plaintiff, the Court finds that a jury could not properly proceed to find a verdict for the Plaintiff. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

It is therefore **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment (Dkt.11) is **GRANTED**. The Clerk is directed to enter final judgment in favor of Defendant Pall Aeropower Corporation and close this file.