Lesa AQUE, Plaintiff,

v.

**HOME DEPOT U.S.A., INC.; Tim Hourigan; and Sarah Longacre, Defendants.**

**Civil Action No. 1:08–CV–0581–BBM.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Feb. 2, 2009.

Matthew C. Billips, Billips & Benjamin, LLP, Decatur, GA, for Plaintiff.

Carmen Alexander Butler, Tracey T. Barbaree, Alpana Kastoori Gupta, Ashe Rafuse & Hill, Atlanta, GA, for Defendants.

### ORDER

BEVERLY B. MARTIN, District Judge.

This case is before the court on the Report and Recommendation of the Magistrate Judge (the "R & R") [Doc. No. 32]. The R & R recommends that the court grant the Motion to Dismiss and for Partial Judgment on the Pleadings [Doc. No. 8] filed by Defendants Home Depot U.S.A., Inc. ("Home Depot" or "the Company"), Tim Hourigan ("Mr. Hourigan") and Sarah Longacre ("Ms. Longacre") (collectively "Defendants"). The R & R also recommends that the court deny the Motion to Amend Complaint [Doc. No. 14] filed by Plaintiff Lesa Aque ("Ms. Aque"). Ms. Aque has filed Objections to the R & R [Doc. No. 36], which the court considers on a *de novo* basis.

### I. *Factual and Procedural Background*

Ms. Aque has not specifically objected to the Magistrate Judge's recitation of the facts. The court has reviewed the Magistrate Judge's description of the facts under the clear error standard and finds none. Therefore, the court adopts those facts as stated in the R & R.[1] The following is a summary of the most relevant facts.

Ms. Aque is a white female who has Multiple Sclerosis ("MS"). From 1997–2007, Ms. Aque was an employee of Home Depot. In April 2004, she was promoted to the position of Associate Merchant in

---

1. The facts as stated in the R & R were taken from the Complaint. On a motion to dismiss,

the Home Depot Merchandising Department. At this time her supervisor was William Haas ("Mr. Haas"), Global Product Merchant and leader of the Special Orders team. In July 2004, Sonny Markanda became a Product Merchant and Ms. Aque's direct supervisor. However, Mr. Haas remained the leader of the Special Orders team, of which Ms. Aque was a member.

In August 2005, Ms. Aque began a medical leave of absence because of her MS condition and a malignant tumor. When she returned to work in October 2005, Home Depot informed Ms. Aque that due to a restructuring she needed to reapply for her position. She thereafter complained to Home Depot officials, including those in the Human Resources ("HR") Department, that this was a violation of the Family and Medical Leave Act ("FMLA"). Approximately one month later, Ms. Aque again complained to HR officials on the same grounds. Shortly thereafter, she was assigned to the same Associate Merchant position in a different department.

In January 2006, Susan Lada ("Ms. Lada"), also a Product Merchant, became Ms. Aque's new supervisor. Ms. Lada subsequently proceeded to make comments about Ms. Aque's engagement to "a black man," and referenced Ms. Aque's clothing taste as "ghetto." (Compl. ¶¶ 25–26.) Ms. Lada also criticized Ms. Aque's absences from work, required her to work on several vacation and sick days, and indicated that Ms. Aque would have received higher performance evaluation scores had she not been sick and taken medical leave. In response, Ms. Aque

complained to the Home Depot HR Department about Ms. Lada, and described the racially derogatory statements as well as those made about Ms. Aque's health.

On March 14, 2006, Mr. Haas filed suit against Home Depot, claiming age and race discrimination and retaliation. On October 18, 2006, Ms. Aque testified at a deposition in Mr. Haas's case pursuant to a subpoena she had received. During this deposition Ms. Aque testified to facts supporting Mr. Haas's claims, also stating that Home Depot had discriminated against her, on the bases of her race and disability. Shortly thereafter, Ms. Lada was deposed and learned of the contents of Ms. Aque's earlier testimony. As a result, Ms. Lada treated Ms. Aque "with greater disdain than ever, declining to speak to her or even to greet her when encountering her at the store." (*Id.* ¶ 36.)

From December 12, 2006 to January 24, 2007, the Haas litigation was stayed pending mediation. Discovery in that case resumed January 24, 2007. On or about February 23, 2007, Ms. Aque received a letter from Home Depot informing her that her current position was to be included in a permanent layoff taking effect on or about April 27, 2007. Ms. Aque was also told that she could apply for other positions within the Company. However, despite having submitted applications for other positions, and following up numerous times, she did not receive a single interview. Additionally, the only other employee in Ms. Aque's department who was not asked to interview for a position was Mr. Haas. Ms. Aque complained about her employment situation to both Mr. Hourigan

---

the court accepts as true all factual allegations set out in the Plaintiff's Complaint. *See Lotierzo v. Woman's World Med. Ctr., Inc.,* 278 F.3d 1180, 1182 (11th Cir.2002). Therefore

the following account does not constitute findings of fact by the Magistrate Judge, nor by this court.

(the Vice President for Human Resources with Home Depot), and Ms. Longacre (a Human Resources employee with Home Depot). Despite assurances from each that the issue would be researched, and that Ms. Aque would receive an interview, she was never granted an interview for a different position at the Company. On or about March 29, 2007, Ms. Aque was required to turn in her computer, badge, and other Company property, and she was ultimately terminated from Home Depot.

Ms. Aque filed a charge of discrimination with the Equal Employment Opportunity Commission on April 19, 2007, and subsequently received a notice of her right to sue. On January 11, 2008, Ms. Aque filed suit in the Superior Court of Fulton County against Home Depot, Mr. Hourigan, and Ms. Longacre. On February 22, 2008, Defendants removed the case to this court. Ms. Aque claims that she was discriminated against by Defendants on the basis of her race and disability, in retaliation for testifying in federal court about the Company's alleged discrimination against herself and Mr. Haas, and to deter her from further participation in the Haas litigation as a witness. The Complaint alleges violations of 42 U.S.C. §§ 1981, 1985, and 1986; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.; the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq.; and the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq.

Defendants subsequently filed a Motion to Dismiss the Title VII, ADA, and ADEA claims against Mr. Hourigan and Ms. Longacre, as well as to dismiss the § 1985 and § 1986 claims in their entirety. Ms. Aque thereafter filed a Motion to Amend her Complaint in order to address the issues in Defendants' Motion. In the R & R, the Magistrate Judge recommended that the Defendants' Motion to Dismiss and for Partial Judgment on the Pleadings be granted, and that Ms. Aque's Motion to Amend Complaint be denied. The Magistrate Judge pointed out that Title VII, the ADA, and the ADEA prohibit a finding of individual liability. The Magistrate Judge found that Ms. Aque had not sufficiently alleged a deterrence claim under § 1985(2), and that the retaliation claim under the same section was barred by the intracorporate conspiracy doctrine. Because Ms. Aque's § 1986 claim is derivative of her § 1985 claim, the R & R recommended that the § 1986 claim be dismissed as well. Finally, because Ms. Aque's Motion to Amend Complaint was filed in response to the issues raised in Defendants' Motion to Dismiss, the R & R recommended denial of Ms. Aque's Motion to Amend. Ms. Aque timely filed an Objection to the R & R on January 8, 2009.

Ms. Aque makes four objections: (1) she asserts that she has sufficiently pled a violation of 42 U.S.C. § 1985(2) by alleging a criminal deterrence conspiracy; (2) she asserts that she has likewise sufficiently pled a violation of 42 U.S.C. § 1985(2) by alleging a retaliatory conspiracy not barred by the intracorporate conspiracy doctrine; (3) because her claims under 42 U.S.C. § 1985(2) are sufficiently alleged, her dependent claims under 42 U.S.C. § 1986 must survive; and (4) the conspiracy claims in the case continue to be viable and therefore the Motion to Amend the Complaint is not rendered moot and should be granted.

## II. *Legal Standard*

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a mo-

tion to dismiss when a complaint fails to state a claim upon which relief can be granted. To withstand a motion to dismiss, a complaint need not contain "detailed factual allegations," but must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Here, the court must determine whether Plaintiff "has alleged enough facts to suggest, raise a reasonable expectation of, and render plausible" her claims. *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1296 (11th Cir.2007). The court construes the Complaint in Plaintiff's favor, and accepts the facts she alleges as true. *M.T.V. v. DeKalb County Sch. Dist.,* 446 F.3d 1153, 1156 (11th Cir.2006). However, "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 127 S.Ct. at 1964–65. Thus, a wholly conclusory statement of a claim cannot, without more, survive a motion to dismiss. *See Weissman v. Nat'l Ass'n of Sec. Dealers, Inc.,* 500 F.3d 1293, 1303 (11th Cir.2007) (citing *Twombly,* 127 S.Ct. at 1968).

## III. *Analysis*

Ms. Aque has made four objections to the R & R. After careful consideration of Ms. Aque's objections, the court will adopt in part and reject in part the Magistrate Judge's rulings.

### A. Title VII, ADA, & ADEA Claims Against Individual Defendants

■ As previously noted, the Magistrate Judge found that the Title VII, ADA, and ADEA claims against Mr. Hourigan and Ms. Longacre should be dismissed because each of the three statutes prohib-

its a finding of individual liability. Ms. Aque has not taken issue with this finding. "Title VII, the ADA, and the Age Discrimination in Employment Act all have similar definitions of 'employer' and courts routinely apply arguments regarding individual liability to all three statutes interchangeably." *Dearth v. Collins,* 441 F.3d 931, 934 n. 2 (11th Cir.2006) (citation and internal quotations omitted). It is well established that there is no individual liability under any of the three statutes. *See Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991) (no individual liability under Title VII); *Smith v. Lomax,* 45 F.3d 402, 403 n. 4 (11th Cir.1995) (no individual liability under the ADEA); *Mason v. Stallings,* 82 F.3d 1007, 1009 (11th Cir. 1996) (no individual liability under the ADA). The court therefore ADOPTS the Magistrate Judge's ruling that the Title VII, ADA, and ADEA claims be dismissed as against Mr. Hourigan and Ms. Longacre.

### B. 42 U.S.C. § 1985 Claims

■ Count Two of Ms. Aque's Complaint alleges that Defendants conspired in violation of 42 U.S.C. § 1985(2). The statute provides, in part, for civil liability in two distinct circumstances:

**§ 1985 Conspiracy to interfere with civil rights**

(2) Obstructing justice; intimidating party, witness, or juror

> If two or more persons in any State or Territory conspire to [1] deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to [2] injure such party

or witness in his person or property on account of his having so attended or testified ...

in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(2), (3). Importantly, where, as here, a corporation and its members are alleged to have participated in a conspiracy, the intracorporate conspiracy doctrine may be implicated. *See McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir.2000).

The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. Simply put, under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves.

*Id.* The principle is that a single legal entity, which consists of the corporation and its agents, cannot conspire with itself, just as an individual person cannot conspire with himself. *Dickerson v. Alachua County Comm'n*, 200 F.3d 761, 767 (11th Cir.2000). However, an important exception to this doctrine exists—"the intracorporate conspiracy doctrine cannot shield corporate employees and corporations accused of criminal conspiracies." *McAn-*

*drew*, 206 F.3d at 1039. In *McAndrew*, the court held that "both the rationale for the intracorporate conspiracy doctrine and the legislative history of § 1985(2) counsel in favor of a consistent application of the criminal conspiracy exception to the intracorporate conspiracy doctrine regardless of whether the criminal conspiracy arises under the federal criminal or civil code." *Id.* at 1040 (analyzing whether a deterrence claim under § 1985(2) was barred by the doctrine). The court analyzes the § 1985(2) retaliation and deterrence claims in turn.

### i. § 1985(2) Retaliation Claim

■ Ms. Aque's Complaint alleges in part that Defendants "conspired to ... injure Plaintiff on account of having testified in a United States District Court proceeding ... in violation of 42 U.S.C. Section 1985(2)." (Compl. ¶ 78.) To establish a § 1985(2) retaliation claim, a Plaintiff must allege "(1) a conspiracy, (2) retaliation spawned by the attendance or testimony in federal court, (3) an act in furtherance of the conspiracy, and (4) injury to the plaintiff." *Foster v. Pall Aeropower Corp.*, 111 F.Supp.2d 1320, 1322 (M.D.Fla. 2000).

### (1) Criminal Conspiracy

The Magistrate Judge found that Ms. Aque's retaliation claim failed to state facts sufficient to support the existence of a criminal conspiracy because the conspirators all work for Home Depot and the intracorporate conspiracy doctrine barred her § 1985(2) claim. The Magistrate Judge found that Ms. Aque had not sufficiently alleged a criminal conspiracy under any potentially viable statute. The R & R specifically discussed Ms. Aque's claim that "Defendants' actions constitute crimes

against the United States ... in violation of 18 U.S.C. § [ ] 241." (Compl. ¶ 82.) The Magistrate Judge reasoned that although § 241 is a criminal statute, "termination of at-will employment is not the type of 'injury, oppression, threat, or intimidation' typically found to provide a cause of action under § 241."[2] (R & R 1352.) Ms. Aque objects to the R & R's rationale, and argues that § 241 covers the type of conduct alleged in her Complaint. She claims that the intracorporate conspiracy doctrine therefore does not bar her § 1985(2) retaliation claim, and Defendants' Motion to Dismiss on this issue should be denied.

■■ 18 U.S.C. § 241 is the "criminal counterpart to [42 U.S.C.] § 1985." *Kinney v. Weaver*, 367 F.3d 337, 355 n. 22 (5th Cir.2004). The statute criminalizes conspiracies against rights and provides for fines and/or imprisonment

> [i]f two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same. . . .

18 U.S.C. § 241. Importantly, a claim brought under a civil statute, such as 42 U.S.C. § 1985, which alleges conduct that qualifies as a crime under 18 U.S.C. § 241, suffices to exempt the claimed conspiracy from the intracorporate conspiracy doctrine. *See Battiste v. Jenne*, No. 05–22970–CIV–HUCK/GARBER, 2006 WL 3665420, at *2 (S.D.Fla. Nov. 15, 2006) (holding that Plaintiffs' conspiracy claim arising under 42 U.S.C. § 1983 alleged conduct that was a crime under 18 U.S.C. § 241 and because the conspiracy alleged was criminal in nature, the intracorporate conspiracy doctrine did not apply). Although the R & R stated that the claim of termination of Ms. Aque's at-will employment was not the type of "injury, oppression, threat or intimidation" that typically provides a cause of action under § 241, Ms. Aque's claims go beyond just her termination.

---

**2.** The R & R also cites *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979) for its holding that "although 18 U.S.C. § 241 is a broad civil rights statute ... the application of this statute to causes of action under the post-Civil War statutes cannot be so broad as to defeat the Congressional intent behind Title VII's administrative requirement and statutory caps." (R & R 1352.) In *Novotny*, the Supreme Court held that the question was whether the rights created by Title VII could be asserted within the remedial framework of § 1985(3), and subsequently decided "that § 1985(3) may not be invoked to redress violations of Title VII." *Novotny*, 442 U.S. at 378, 99 S.Ct. 2345. The Eleventh Circuit, in analyzing *Novotny*, found it important that "[t]he Novotny Court did not address whether Title VII preempts a § 1985(3) claim based on rights created by the Constitution or laws other than Title VII." *Dickerson*, 200 F.3d at 766. In *Dickerson*, the Eleventh Circuit held that although the plaintiff's Title VII and § 1985(3) claims arose "out of the same underlying facts, the rights which [we]re the basis of the § 1985(3) claim [we]re rights created by the Constitution, not by Title VII." *Id.* The court went on to find that therefore "the holding of Novotny simply d[id] not apply," and that the § 1985(3) claim was not preempted by Title VII. *Id.* at 766–67. Likewise, although Ms. Aque's § 1985(2) retaliation and Title VII claims arise out of the same underlying facts, the rights which are the basis of the § 1985(2) retaliation claim are created by the Constitution, not Title VII, so, based on the reasoning of the Eleventh Circuit in *Dickerson*, the court therefore also finds *Novotny* inapplicable. *See infra*, at 1345–46.

While discussing § 241, the court in *United States v. Pacelli* said "Title 18 U.S.C. § 241 protects the free exercise of rights 'secured by the Constitution or laws of the United States.'" 491 F.2d 1108, 1113 (2d Cir.1974). It went on to clarify that in deciding what rights are "so secured," the statute reaches farther than merely the explicit words of the Constitution or federal laws. *See id.*

> The Supreme Court has long made clear that certain rights are implicitly conferred by the Constitution's establishment of a national government intended to be 'paramount and supreme within its sphere of action.' One of these is the right to testify at a federal trial in response to a request or command of a federal district court.

*Id.* (quoting *In re Quarles,* 158 U.S. 532, 536, 15 S.Ct. 959, 39 L.Ed. 1080 (1895)). The court explained that the federal government has a particular interest in protecting a prospective witness so as to prevent an undermining of the "foundations of federal justice." *Id.* Numerous other courts have also recognized such a right as being protected by § 241. *See e.g., United States v. Guillette,* 547 F.2d 743, 748 (2d Cir.1976) (recognizing "that the right to be a witness in a federal trial is a civil right secured by the Constitution and protected from infringement or deprivation by § 241"); *United States v. Walker,* 710 F.2d 1062, 1071 (5th Cir.1983) (recognizing the same right); *United States v. Harvey,* 526 F.2d 529, 535 (2d Cir.1975) (stating that § 241 "contemplates the right to give information to the authorities about federal crimes or to testify at a federal trial").

Additionally, in construing § 1985(2), the civil counterpart to § 241, *see Kinney,* 367 F.3d at 355 n. 22, the court in *Haddle v. Garrison* found that "[t]he gist of the wrong at which § 1985(2) is directed is not deprivation of property, but intimidation or retaliation against witnesses in federal-court proceedings." 525 U.S. 121, 125, 119 S.Ct. 489, 142 L.Ed.2d 502 (1998). Although the issue in *Haddle* was the injury component, the opinion indicates that Mr. Haddle sufficiently stated a § 1985(2) retaliation claim when he alleged a conspiracy by his at-will employer to retaliate against him for attending a grand jury proceeding. *See O'Neal v. Garrison,* 263 F.3d 1317, 1321 (11th Cir.2001). Finally, in discussing § 241, the Supreme Court has held

> that the history of the events from which § 241 emerged illuminates the purpose and means of the statute with an unmistakable light. We think that history leaves no doubt that, if we are to give § 241 the scope that its origins dictate, we must accord it a sweep as broad as its language.

*United States v. Price,* 383 U.S. 787, 801, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966). In light of the foregoing discussion, the court finds that Ms. Aque's § 1985(2) retaliation claim sufficiently alleges conduct that would qualify as a criminal conspiracy in violation of § 241, and her claim is not barred by the intracorporate conspiracy doctrine.

#### (2) Sufficiency of Agreement Allegations

 Defendants also argued in their Motion to Dismiss that Ms. Aque's § 1985(2) retaliation claim fails because the Complaint does not allege any facts to support the existence of a conspiracy or agreement. (Defs.' Mem. of Law in Supp. of Mot. to Dismiss 8–9.) The principal elements of conspiracy are an "agreement between parties to inflict a wrong against

or injury upon another, and an overt act that results in that damage." *Northrup v. Conseco Fin. Corp.*, 141 F.Supp.2d 1372, 1375 (M.D.Ga.2001). Additionally, "the existence of an agreement in a conspiracy case is rarely proven by direct evidence that the conspirators formally entered or reached an agreement. . . . The more common method of proving an agreement is through circumstantial evidence." *United States v. Ervin*, 300 Fed.Appx. 845, 848 (11th Cir.2008) (citation and internal quotations omitted). The Eleventh Circuit requires a heightened pleading standard in conspiracy cases because a defendant must be informed of the nature of the conspiracy alleged. *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir.1984). "It is not enough to simply aver in the complaint that a conspiracy existed." *Id.* Thus, conclusory, vague, and general allegations of conspiracy may justify dismissal of a complaint. *Id.*

 The court finds that Ms. Aque's Complaint sufficiently alleges facts which support her conspiracy to retaliate claim while providing "defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp.*, 127 S.Ct. at 1964 (citation and internal quotations omitted). The Complaint first describes that the Haas litigation was stayed from December 12, 2006 to January 24, 2007 pending mediation, but that discovery resumed on January 24, 2007. Ms. Aque alleges that around a month later, beginning February 23, 2007, the entire body of Home Depot's Human Resources employees were "well aware of Mr. Haas['s] pending legal action," and that they were likewise "aware of Plaintiff's involvement as a witness in that proceeding." (Compl. ¶ 44.) She alleges that she complained to Ms. Longacre, a member of the Human Resources Department, that she had not received interviews, and was told that "she would research the issue further." (*Id.* ¶ 46.) Ms. Aque next claims that she spoke with Mr. Hourigan, the VP for Human Resources for Merchandising and Marketing, and received a similar response to that given by Ms. Longacre—that "he would look into the matter and get back to her." (*Id.* ¶ 47.) The Complaint ultimately alleges that Ms. Longacre gave Ms. Aque an excuse about not receiving interviews based on a "computer glitch." (*Id.* ¶ 50.) Ms. Aque also claims that during this same time period, another employee was asked to interview for one of the positions for which Ms. Aque had applied, even though that employee had not applied for it in the first place.

Ms. Aque's Complaint alleges facts, which if true, suggest "a reasonable expectation of, and render plausible" the existence of an agreement to retaliate against her for her assistance in the Haas case. *Watts*, 495 F.3d at 1296. Likewise, her Complaint makes clear to Defendants the nature of the claim and the grounds upon which it rests. Although the Complaint never uses the word "agreement," the facts she alleges are sufficient to suggest the presence of circumstantial evidence that such an agreement existed. The chronology of events alleged in her Complaint are sufficient, for now, to state a circumstantial claim that employees within the HR Department were working in concert with one another to specifically deny her requests for an interview as retaliation for her participation in Mr. Haas's discrimination case. Additionally, Ms. Aque has more than sufficiently identified the individuals she believes to be participants in the conspiracy, the general purpose, as well as the dates on or about which such actions took place. *See Loubser v. Thack-*

*er,* 440 F.3d 439, 443 (7th Cir.2006) (requiring that the plaintiff allege the parties, the general purpose, and the approximate date of the conspiracy to survive dismissal). The court therefore finds that Ms. Aque has adequately alleged facts to support her conspiracy to retaliate claim pursuant to § 1985(2), and dismissal of this claim is not appropriate.

### ii. § 1985(2) Deterrence Claim

■ Ms. Aque also claims that "[t]he conspirators conspired to deter Plaintiff" from attending or being a witness in United States court in violation of § 1985(2). (Compl. ¶ 78.) "The elements of a deterrence claim under section 1985(2) are (1) a conspiracy, (2) to deter testimony by force or intimidation, and (3) injury to the plaintiff." *Timmerman v. U.S. Bank, N.A.,* 483 F.3d 1106, 1124 (10th Cir.2007) (citation and internal quotations omitted). As stated in *McAndrew,* a § 1985(2) claim alleging a conspiracy to deter an individual from testifying in federal court "necessarily alleges criminal activity in violation of 18 U.S.C. § 1512." *McAndrew,* 206 F.3d at 1039. Therefore, a properly stated deterrence claim under the statute is not barred by the intracorporate conspiracy doctrine. *Id.* at 1035.

The Magistrate Judge found that Ms. Aque's § 1985(2) retaliation claim was "her only § 1985 claim." (R & R 1351.) Specifically, the R & R contains a finding that Ms. Aque had not properly alleged a conspiracy to deter because "[t]he conspiracy alleged by Plaintiff commenced after her testimony and therefore could not have deterred her from testifying." *Id.* In her objections to the R & R, Ms. Aque argues, among other things, that she has sufficiently alleged a criminal deterrence conspiracy that survives Defendants' Motion to Dismiss.

■ A § 1985(2) deterrence claim is sufficiently stated where a plaintiff merely alleges deterrence of a potential witness. *See Chahal v. Paine Webber Inc.,* 725 F.2d 20, 24 (2d Cir.1984).

> The statute does not define the term 'witness.' However, Congress' purpose, which was to protect citizens in the exercise of their constitutional and statutory rights to enforce laws enacted for their benefit, is achieved by interpreting the word 'witness' liberally to mean not only a person who has taken the stand or is under subpoena but also one whom a party intends to call as a witness. Deterrence or intimidation of a potential witness can be just as harmful to a litigant as threats to a witness who has begun to testify.

*Id.* In *Chahal,* the court found that the complaint stated a § 1985(2) claim where the plaintiffs alleged that they had intended to obtain the testimony of an individual who had previously rendered a favorable opinion as an expert witness. *Id.* Similarly, other courts have found a claim properly stated where a plaintiff had not yet been called to testify as a witness in court. *See e.g., DePace v. Jefferson Health Sys., Inc.,* No. Civ.A.04–1886, 2004 WL 2850067, at *2 (E.D.Pa. Dec. 7, 2004) (refusing to dismiss a § 1985(2) deterrence claim where plaintiff and another individual had not been called as a witness, but plaintiff would "certainly" have been asked to provide discovery and the other individual had been named as a potential witness); *Brever v. Rockwell Int'l Corp.,* 40 F.3d 1119, 1128 n. 11 (10th Cir.1994) (stating that Congress' purpose "is achieved by interpreting the word 'witness' liberally to mean not only a person who has taken the stand or is under subpoena but also one whom a party intends to call as a witness."); *Shoultz v.*

*Monfort of Colo., Inc.,* 754 F.2d 318, 322 (10th Cir.1985) (suggesting that the § 1985(2) claim would not have been dismissed if the plaintiff had alleged a conspiracy to deter him from bringing a suit which might be maintained in the federal courts).

■■■ Examined in light of this standard, the court finds that Ms. Aque has sufficiently stated a § 1985(2) deterrence claim based on her continuing participation in the Haas litigation and the potential that she would be called as a witness in that case. The Complaint states that Ms. Aque gave a deposition for the Haas case in which Mr. Haas claimed Home Depot had discriminated against him based on his age and race. Following this testimony, she also provided copies of records and notes to Mr. Haas's counsel. The Complaint next alleges that various employees and members of the HR Department at Home Depot were aware that Ms. Aque had provided such assistance. A month after resumption of discovery on January 24, 2007, the Complaint alleges, Ms. Aque received a letter informing her of a permanent lay-off to take place on or about April 27, 2007. The Complaint is replete with references to the "pending" nature of Mr. Haas's legal action, and Defendants' awareness of Ms. Aque's "involvement as a witness in that proceeding even prior to the date she personally informed them about it." (Compl. ¶ 44.) Likewise, the Complaint makes numerous claims based on Defendants' alleged actions promising Ms. Aque interviews for other positions within the Company throughout this time period. Finally, Ms. Aque alleges that during this time, Mr. Hourigan himself had been identified as a witness in the pending Haas case. Although Ms. Aque's deposition testimony had admittedly occurred prior to the alleged conspiracy, the ongoing nature of the Haas litigation, Ms. Aque's involvement in that case, and Defendants' knowledge of both of these facts suffices to state a § 1985(2) deterrence claim based on her participation as a "potential witness." *Chahal,* 725 F.2d at 24. Consequently, dismissal is not appropriate as to the § 1985(2) deterrence claim.

### C. 42 U.S.C. § 1986 Claim

■■■ Following the R & R's findings that the § 1985 claim should be dismissed, the Magistrate Judge held that "[b]ecause Plaintiff's § 1986 claim is derivative of her § 1985 claim ... Defendant's [sic] Motion to Dismiss with respect to Plaintiff's § 1986 claim should also be GRANTED." (R & R 1352.) Likewise, in Defendants' Motion to Dismiss, Defendants argue for dismissal of the § 1986 claim solely because "Plaintiff's claim ... fails in the absence of proof of an actionable claim under Section 1985." (Defs.' Mem. of Law in Supp. of Mot. to Dismiss 9 n. 3.) Therefore because the court has found that Ms. Aque's § 1985 deterrence and retaliation claims survive under the 12(b)(6) standard, the dismissal of the § 1986 claim is no longer justified on that basis.

### D. Motion to Amend Complaint

Finally, the R & R found that based on its recommended dismissal of the conspiracy claims, Ms. Aque's Motion to Amend Complaint, which sought to "clarify issues regarding the individual defendants and her conspiracy claims," should likewise be denied. (R & R 1352.) Because the court finds dismissal of the conspiracy claims to be inappropriate, it will GRANT Ms. Aque's Motion to Amend Complaint.

### IV. *Summary*

For the foregoing reasons, court adopts in part and declines to adopt in part the

Magistrate Judge's Report and Recommendation. The Motion to Dismiss and for Partial Judgment on the Pleadings [Doc. No. 8] filed by Defendants is GRANTED as to the Title VII, ADA, and ADEA claims alleged against Mr. Hourigan and Ms. Longacre. The Motion to Dismiss and for Partial Judgment on the Pleadings is DENIED with respect to Ms. Aque's claims made pursuant to 42 U.S.C. § 1985 and 42 U.S.C. § 1986. The Motion to Amend Complaint [Doc. No. 14] filed by Ms. Aque is GRANTED. Ms. Aque has 10 days from the date of entry of this Order to file her Amended Complaint.

### *REPORT AND RECOMMENDATION*

GERRILYN G. BRILL, United States Magistrate Judge.

This case is before the Court on Defendants' Motion to Dismiss and for Partial Judgment on the Pleadings (Doc. 8) and Plaintiff's Motion to Amend Complaint (Doc. 14). For the reasons below, I **RECOMMEND** that Defendants' Motion to Dismiss be **GRANTED** and that Plaintiff's Motion to Amend be **DENIED**.

### I. *BACKGROUND*

Plaintiff was an employee of Defendant Home Depot U.S.A., Inc. ("Home Depot") from 1997 to 2007. In April 2004, Home Depot promoted Plaintiff to the position of Associate Merchant in the Merchandising Department. Her responsibilities as Associate Merchant included special order activity, as well as budgeting and planning for the lumber and building material departments.

Plaintiff is a Caucasian female who has Multiple Sclerosis ("MS"). According to her Complaint, the facts giving rise to her claims began in August 2005 when she went on a medical leave of absence related to MS and a malignant tumor. After Plaintiff returned from her medical leave, Home Depot informed her that due to a restructuring she would have to reapply for her position. Plaintiff complained to Home Depot officials, including those in the Human Resources ("HR") department, that she believed this requirement violated her FMLA rights. Approximately one month later, Plaintiff again complained to HR officials that this requirement violated her FMLA rights, and shortly thereafter she was assigned to the same position in a different department.

In January 2006, Susan Lada became Plaintiff's immediate supervisor. Lada criticized Plaintiff for her absences from work, some of which were related to her MS. Lada also noticed a photograph of Plaintiff's fiancé on her desk and noted with surprise that Plaintiff was engaged to an African American. Thereafter, Lada made comments to Plaintiff of a racial nature, such as calling her clothing taste "ghetto." In early 2006, Plaintiff completed a self-evaluation, approved by her previous supervisors, in which she rated herself as an "achiever." In April 2006, Plaintiff received a lower score in a subsequent performance evaluation conducted by Lada. Lada indicated that Plaintiff would have received a better rating had she not been sick and taken medical leave. Plaintiff complained to Home Depot's HR department about Lada's racial and health-related remarks.

On March 14, 2006, Home Depot employee William Haas filed suit against Home Depot, claiming age and race discrimination and retaliation. Haas' attorney took Plaintiff's deposition on October 18, 2006. During her deposition, Plaintiff

supported Haas' claims and testified that Home Depot discriminated against her on the bases of race and disability and violated her FMLA rights. Shortly thereafter, Lada learned of Plaintiff's testimony during her own deposition in the *Haas* litigation.

On or about February 23, 2007, Plaintiff received a letter from Home Depot, informing her that her position was included in a permanent layoff to be effective on or about April 27, 2007. Plaintiff submitted applications for numerous other positions at Home Depot but was not asked to interview for any position. The only other employee in Plaintiff's department who was not asked to interview for a position was Haas.

Plaintiff complained about her employment situation to two Home Depot HR employees: Sarah Longacre and Tim Hourigan. Hourigan assured Plaintiff that she would be interviewed in the next round of interviews. Despite Hourigan's assurance, Plaintiff did not receive an interview. Home Depot ultimately terminated Plaintiff's employment.

Plaintiff filed a charge of discrimination with the EEOC on April 19, 2007 and subsequently received a notice of right to sue. Plaintiff filed this lawsuit in the Superior Court of Fulton County on January 11, 2008. Defendants removed the lawsuit to this Court on February 22, 2008.

## II. *DISCUSSION*

Plaintiff brings claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), the Fami-

ly and Medical Leave Act, 29 U.S.C. § 2601 ("FMLA"), 42 U.S.C. § 1981, 42 U.S.C. § 1985, and 42 U.S.C. § 1986. Defendants filed a Motion to Dismiss the Title VII, ADA, and ADEA claims against individual defendants Hourigan and Longacre, as well as to dismiss the § 1985 and § 1986 claims in their entirety. Plaintiff filed a Motion to Amend her Complaint to address the issues in Defendants' motion. The parties' motions are addressed below.

### A. *Standard of Review*

■■■■■■ "The factual allegations in the complaint must be taken as true for purposes of a motion to dismiss." *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). "Dismissal is appropriate where it is clear the plaintiff can prove no set of facts in support of the claims in the complaint." *Id.* "Accordingly, the court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Id.*

### B. *Plaintiff's Title VII, ADA, and ADEA Claims*

Defendants filed a Motion to Dismiss the Title VII, ADA, and ADEA claims against individual defendants Hourigan and Longacre because these statutes prohibit a finding of individual liability. (Doc. 8). Plaintiff does not argue that any of these statutes permit a finding of individual liability and, indeed, clarifies that she brings these claims solely against Home Depot. (Doc. 14 at 1). Defendants' Motion to Dismiss with respect to the Title VII, ADA, and ADEA claims against individual defendants Hourigan and Longacre should therefore be **GRANTED.**

## C. Plaintiff's § 1985 and § 1986 Claims

Plaintiff also contends that Defendants conspired, in violation of 42 U.S.C. § 1985, to terminate her employment in retaliation for her deposition testimony in the *Haas* litigation. Section 1985 provides a cause of action to victims of conspiracies intended to injure or deter "any party or witness in any court ... from attending such court, or from testifying to any matter pending therein." 42 U.S.C. § 1985(2).[1] To establish a § 1985(2) "retaliation" claim, Plaintiff must allege "(1) a conspiracy, (2) retaliation spawned by the attendance or testimony in federal court, (3) an act in furtherance of the conspiracy, and (4) injury to the plaintiff" *Foster v. Pall Aeropower Corp.*, 111 F.Supp.2d 1320, 1322 (M.D.Fla.2000).

In regard to the conspiracy element, the intracorporate conspiracy doctrine holds that "a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir.2000). The intracorporate conspiracy doctrine, therefore, generally bars § 1985(2) claims against conspirators who work for the same corporation. *See id.* The intracorporate conspiracy doctrine does not apply, however, to criminal conspiracies, *Id.* at 1039.

Here, Plaintiff alleges a conspiracy among employees of the same corporation, Home Depot. To avoid dismissal of her § 1985(2) claim on the basis of the intracorporate conspiracy doctrine, the alleged conspiracy must be a criminal conspiracy. Plaintiff argues that the conspiracy here is a criminal conspiracy because, pursuant to *McAndrew*, "a § 1985(2) claim alleging a conspiracy to deter a person by force, intimidation, or threat from testifying in a federal court proceeding squarely and unambiguously alleges a criminal conspiracy in violation of 18 U.S.C. §§ 371, 1512." *Id.* at 1035–36. *McAndrew* involved a claim that corporate officers conspired to deter an employee from testifying before a federal grand jury that was conducting a criminal investigation of the plaintiff's employer. The conduct alleged in *McAndrew* violated 18 U.S.C. §§ 371 and 1512. Plaintiff mistakenly conflates a claim of § 1985(2) deterrence, as was made in *McAndrew*, with a claim of § 1985(2) retaliation, her only § 1985 claim.

Specifically, Plaintiff does not allege a conspiracy under § 371, the general conspiracy statute, because that statute prohibits conspiracies to violate another criminal statute. *See United States v. Harmas*, 974 F.2d 1262, 1266 n. 5 (11th Cir.1992). Plaintiff does not allege an underlying criminal statute violated by the conspiracy. Further, Plaintiff does not allege a conspiracy under § 1512 because that statute prohibits conspiracies to *deter* a witness from testifying in a federal proceeding. The conspiracy alleged by Plaintiff commenced after her testimony and therefore could not have deterred her from testifying.

---

1. The relevant portion of § 1985(2) reads,

 [i]f two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

Anticipating this rebuttal, Plaintiff points to 18 U.S.C. § 241, which makes it unlawful, in part, for "two or more persons [to] conspire to injure, oppress, threaten, or intimidate any person ... in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same." Absent further conduct, termination of at-will employment is not the type of "injury, oppression, threat, or intimidation" typically found to provide a cause of action under § 241. *Cf. United States v. Veal*, 153 F.3d 1233, 1238 (11th Cir.1998) (§ 241 charge relating to brutal homicide reaches jury); *United States v. Stewart*, 65 F.3d 918, 922 (11th Cir.1995) (defendants convicted under § 241 for burning cross and discharging weapon in victims' yard).

In addition, although 18 U.S.C. § 241 is a broad civil rights statute, the Supreme Court has recognized that the application of this statute to causes of action under the post-Civil War statutes cannot be so broad as to defeat the Congressional intent behind Title VII's administrative requirement and statutory caps. *See Great American Fed. Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 375–76, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979).

As Plaintiff makes no other argument regarding the existence of a criminal conspiracy, the Court finds that Plaintiff does not state facts that will support the existence of a criminal conspiracy. Because the conspirators all work for Home Depot, the intracorporate conspiracy doctrine bars Plaintiff's § 1985(2) claim. Defendant's Motion to Dismiss Plaintiff's § 1985(2) claim should therefore be **GRANTED**.

Because Plaintiff's § 1986 claim is derivative of her § 1985 claim, *Farese v. Scher-er*, 342 F.3d 1223, 1232 n. 121 (11th Cir. 2003), Defendant's Motion to Dismiss with respect to Plaintiff's § 1986 claim should also be **GRANTED**.

D. *Plaintiff's Motion to Amend Complaint*

Plaintiff also filed a Motion to Amend Complaint (Doc. 14) to clarify issues regarding the individual defendants and her conspiracy claims. As explained above, Plaintiff's claims related to conspiracy and against the individual defendants are due to be dismissed. Plaintiff's Motion to Amend Complaint is therefore futile, *see Maynard v. Bd. of Regents*, 342 F.3d 1281, 1287 (11th Cir.2003), and on that ground should be **DENIED**.

III. *CONCLUSION*

I **RECOMMEND** that Defendants' Motion to Dismiss and for Partial Judgment on the Pleadings (Doc. 8) be **GRANTED** and that Plaintiff's Motion to Amend Complaint (Doc. 14) be **DENIED**.

**IT IS SO ORDERED** this 9th day of December, 2008.